## Hannah v. Commonwealth.

(Decided June 3, 1927.)

### Appeal from Martin Circuit Court.

1. Witnesses.—Requiring one accused of murder, who offered himself as witness, to answer over objection that he had been convicted in another state of killing a man held proper, under Civil Code of Practice, section 597, providing that it may be shown by examination of witness or record of judgment that he has been convicted of felony.

2. Witnesses.—Requiring one accused of murder, who offered himself as witness, to testify over objection as to fact and. length of sentence under conviction in another state for homicide held proper, under Civil Code of Practice, section 597, providing that it may be shown by examination of witness or record of judgment that he has been convicted of felony, since judgment record would show these facts.

3. Criminal Law.—Court's failure to admonish jury that testimony of accused on cross-examination, over objection, relating to prior conviction and sentence for homicide, was permissible only for purpose of affecting credibility held not reversible error, where record did not show that questions relating to the circumstances of that homicide were answered in any way.

4. Criminal Law.—Failure of instruction on manslaughter in murder case to embrace idea of sudden affray held not prejudicial where defendant was convicted of manslaughter, since, if it had been

included, it would merely have furnished jury another reason for its finding that defendant was guilty of manslaughter.

W. R. McCOY for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

Appellant was indicted charged with the murder of Henry Lawson, and upon his trial was found guilty of manslaughter and sentenced to 10 years' imprisonement.

Upon this appeal he is relying for reversal upon the alleged error of the trial court in the admission of incompetent evidence, the failure of that court to admonish the jury as to the purpose for which certain evidence was admitted, and alleged errors in instructions.

Appellant lived in Martin county near the West Virginia line, and had formerly lived in that state. He was married and had several children. For some months before the homicide, decedent, Henry Lawson, had been living at his house, and a few days theretofore the witness Mary Blackburn had come to his home, and had been there at the time for some days. No eyewitness except appellant testified to the shooting, although the Blackburn woman testifies to events leading up to and occurring prior to the actual shooting, which shooting caused the immediate death of Lawson.

The Blackburn woman testifies that she stayed at the house that night, which was on or about the 1st of January, 1926; that Lawson got up first early the next morning and built a fire in her room, and the other evidence shows that he also built a fire in the room occupied by appellant and his wife; that after witness got up she saw and talked to Lawson in appellant's room, and that appellant was present; that appellant got up and went into the kitchen where his wife and children then were, and left her and Lawson in the room together; that she heard appellant in the kitchen whipping his children, and quarreling or fussing with his wife, but could not hear what he said; that he was mad and quarreling; that she and Lawson left the room they were in, and appellant was then standing in the kitchen door; that witness went in her room and some of appellant's children followed her;

that witness stepped to the door of her room and saw appellant standing near the dining room door, and, apprehending trouble, tried to persuade appellant to make peace; that she then went into Lawson's room and went into the press, fearing there was going to be trouble; that while she was in the press she heard appellant say to Lawson, "Get out of here," and Lawson said, "All right," and witness thereafter heard a noise "like kicking the wall or something," and could hear appellant's voice but did not hear what he was saying, although she could tell he was mad, and shortly thereafter she heard one shot, and thereafter saw Lawson's body lying out in the yard; that she saw each of the men take a drink, and appellant one or two; that while she and Lawson were in appellant's room she saw a pistol there, and decedent had on a holster or holder for a pistol, but that he left the pistol lying on the machine in that room.

On cross-examination, she said that when she and decedent were in appellant's room while appellant was in the kitchen with his wife and children, that decedent picked up the pistol that was in there and put some cartridges in it, and at her suggestion put it back on the machine; that she and decedent then went into her room, and he did not then have a pistol.

Appellant's testimony is to the effect that early that morning decedent came into the room where he and his wife were in bed and started a fire; that decedent had some whisky and offered appellant some of it, but he did not take it; that later decedent left the room and went to some other part of the house, and that in a short time thereafter his wife got up and left the room and went into the dining room or kitchen and built a fire, he, appellant, still being in bed; that she then came back into his room, stayed a short time and asked if he was asleep; that she again went into the dining room, thence out into the hall and into the bedroom of decedent; that witness then got up out of bed, put on his pants, and in a few minutes after she had gone into decedent's room he went there and found her in the bed with decedent; that his wife jumped up and ran past him and went into the Blackburn woman's room, and as she passed him he grabbed her by the back of the neck and shoved her through the door; that Lawson ran out just behind his wife, and said to him, "God damn you, don't you hurt that woman," and threw his

gun on the witness; that at that time decedent was right about the front door, and when he presented his gun at witness he shot him; and that he made no effort to shoot him or do injury to him until decedent presented his gun at him. The witness denies that he had been in the kitchen that morning, or quarreling with his wife, or whipping his children.

The defense was based upon self-defense, but it is obvious that the jury did not accept appellant's statement as to decedent presenting a pistol at him, but, on the contrary, believed the Blackburn woman's testimony that decedent at the time had no pistol.

The evidence complained of as incompetent is that the commonwealth was permitted to show by appellant as a witness, on cross-examination, that he had been convicted of a felony in West Virginia. It was also sought to bring out upon cross-examination that the former charge of homicide against appellant in West Virginia had been brought about because of the relations of another man with appellant's wife, but the transcript fails to disclose that appellant answered these questions.

Appellant having offered himself as a witness, it was proper, under the provisions of section 597, Civil Code, for the commonwealth to show by him that he had been formerly convicted of a felony, but in this case the trial court failed to admonish the jury that such evidence was permissible only for the purpose of affecting his credibility as a witness, if it did, and not for the purpose of showing his guilt or innocence of the charge upon which he was then being tried.

On appellant's cross-examination, he was asked by the attorney for the commonwealth whether he had been convicted in West Virginia for the killing of a man, and over the objection of his counsel was required to answer that he had. He was then questioned further as to whether he had been sentenced to the penitentiary and as to the length of the term for which he was sent, and was required by the court, over the objection of his counsel, to answer these questions. While the form of the question was possibly objectionable, it is expressly provided in section 597, Civil Code, that the evidence of a witness may be impeached by his admission that he has been convicted of a felony, or by the record showing such a judgment. It is regarded as sufficient generally, for

the purposes of such impeachment, to show the bare fact that he has been convicted of a felony; but inasmuch as the Code provision authorizes the proving of this fact either by the witness on cross-examination or by producing the record, it was not prejudicial to also require the witness to show the length of the term of his punishment, as the judgment, if produced, would have disclosed the same fact.

While this evidence was competent, this record fails to disclose that the trial court gave the admonition to the jury above referred to, and it is earnestly insisted that under the facts of this case that was prejudicial. That argument is based upon the fact that thereafter the attorney for the commonwealth asked the witness whether this homicide in West Virginia had any relation to his wife, and whether that killing was brought about by any such thing, and whether he was jealous of that man. Each of these questions was objected to by his counsel, and the court overruled the objection, but the transcript before us does not disclose that they were answered in any way. In other words, the court, so far as this record goes, required the witness to answer these questions, but it does not show how he answered them or that he answered them at all.

That being the state of the record, we cannot say that the failure of the court to admonish the jury was reversible error, although, if the record did disclose that he had answered the last-named questions in the affirmative, it would be difficult to say the court's oversight in not so admonishing the jury was not prejudicial.

It is complained of the instruction on manslaughter that it did not embrace the idea of sudden affray, and that the evidence authorized the submission of that idea. In this case, however, it could not have been prejudicial as he was not convicted under the murder instruction; and the failure to embrace that idea in the manslaughter part of the instruction could not have prejudiced him, for if it had been included it would merely have furnished to the jury another reason for finding him guilty of manslaughter. Peace v. Co., 146 Ky. 754, 143 S. W. 399.

We perceive no error prejudicial to appellant's substantial rights, and the judgment is affirmed.

Judgment affirmed.