## Bowman v. Commonwealth.

(Decided May 17, 1935.)

J. P. CHENAULT for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MUR- PHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At a late hour of an evening in March or April, 1934, Comer Franklin, a youth seventeen years of age, was murdered in Mercer county, Ky. The place was on a. side road a short distance from the state highway and not far from Herrington Lake formed by the damming of Dix river. The guilty party or parties tied a rock to his body with a wire and threw it into the lake. At the following May, 1934, regular term of the Mercer circuit court appellant, Neal Bowman, was indicted charged with the murder of Franklin, and upon his trial at a later day he was convicted and sentenced to electrocution. His motion for a new trial was overruled, and from the judgment pronounced on the verdict he prosecutes this appeal and by his counsel urges as grounds for a reversal: (1) Incompetent evidence offered by the commonwealth and heard by the jury; (2) failure of the court to admonish the jury as to the purpose of certain testimony introduced by the commonwealth; and

(3) alleged prejudicial effect of armed officers in the courtroom during the trial to quell disturbances, if any should occur among the more or less curious spectators in attendance, and to forestall probable efforts to rescue the prisoner on trial.

One or two other minor and wholly immaterial grounds are set out in the motion for a new trial, but counsel for appellant in his brief refers only to the three we have named, the last one of which (3) is wholly unsupported by anything appearing in the record and appears, so far as presented to us, to be a creature of the counsel who attempted to inject into the record (the briefing one in this court not having appeared as defending counsel at the trial) by his incorporating it in the motion for a new trial, and which is the only place in the record where any mention is made of it. We have so often held that such matters occurring at a trial must be manifested to this court in the way pointed out by the practice before it can be considered on appeal that it will be unnecessary to cite our numerous opinions to that effect. Many of them are exact parallels to the practice in this case, i. e., incorporating the matter complained of in the motion for a new trial without making it a part of the record by a bill of exceptions or an order of court, and in each case, without exception, we have declined to consider it. The rule is equally applicable in cases where the supreme penalty of the law was visited upon the appellant. However, if it were otherwise and the complained of matter were properly before us for determination, we would not then conclude that it was ground for reversal, since there would be no basis for the contention that the occurrence complained of prejudicially affected appellant's rights, and under the universal practice both in criminal prosecutions and civil cases no error will be allowed to interfere with the judgment appealed from which does not have such effect.

The appellant here by the proven course which he had adopted created the conditions whereby the excitement of the populace was produced and under which unapprehended members of clans to which he had previously belonged might attempt his rescue, and the law has not yet reached the stage when it will condemn prudent, practical, and essential efforts on the part of an unprejudiced court to guard the interest of both the defendant on trial and society as represented by the

commonwealth at the trial of one accused of violating its laws. If it were otherwise, then the greater the notoriety of the criminal on trial, the greater would be the probability of interrupting disturbances, and which the court would be powerless to prevent, and for all of which defendant would be the sole cause. Fortunately, however, the provided machinery for the enforcement of our criminal laws has not yet become so paralyzed. Moreover, if the members of the jury in our system of determining disputed issues of fact in trials before courts are so dumb intellectually as not to comprehend and duly weigh the purpose of such action on the part of courts, then it is time for us to change our system and provide some more reliable and trustworthy method for the determination of such issues. It is conceivably possible that the trial court might exceed the necessities of the case and adopt unjustified courses that were pregnant with prejudice towards the defendant on trial, and if so this and other appellate courts would then be called upon to rectify the wrong, but only if and when it should be properly brought before it for such action. If, however, we should consider this ground (3) literally as copied in the motion for a new trial, then the matter complained of does not exceed appropriate cautious methods on the part of the court in guarding against conditions of which the defendant was the author, and which, as we have seen, were necessary both for his as well as the commonwealth's protection.

In disposing of ground (1), to which we will now recur, a brief statement of the facts is required. We have been unable to find in the record the exact day of the killing, but it was in 1934 and prior to the convening of the regular May term of the Mercer circuit court for that year. On the particular occasion appellant was driving the automobile and of course sitting on the front seat. Immediately behind him on the rear seat was the deceased, Comer Franklin. By the side of him on the front seat was Lloyd Copenhaver, seventeen years of age, and behind him on the rear seat was Stanley Mercer, who was nineteen years old, the appellant being thirty-one years of age. Some time in January or the early part of February of that year, he had picked up the three youths in Wayne county, Ky., and made them a part of his last marauding band. From thence forward up to the time of the killing the four committed many depredations, mostly in Kentucky, and a short

while prior thereto they had robbed a filling station and store at Camp Nelson, Ky., during which a Mr. Kaufman was killed. After that killing and, perhaps, before then, Comer Franklin, the deceased, expressed a desire to abandon the life he was living and to return to his parents, who lived near Jamestown, Tenn., and Mercer testified at the trial that he (Franklin) frequently expressed such a desire and intention. He is corroborated therein by Copenheaver, who also testified for the commonwealth. They, in substance, stated that appellant had not only warned his three companions in crime against telling anything that happened on any occasion, but had informed them what would be the consequence if they disobeyed that injunction, and which was death to the violator. It was also testified by those two witnesses, in substance, that Bowman had expressed fear and apprehension that the acts and doings of his band would be brought to light through Franklin, who manifested an earnest desire to return and to resume his orderly and law-abiding career with his parents as he had done prior to his linking up with appellant and becoming one of his confederates in crime.

The evidence complained of, as a foundation for this ground, is that elicited from Mercer and Copenheaver with reference to prior depredations (none of the details of which were gone into) to the killing of Franklin and after he became a member of the band, but not an objection was made to any of that testimony. If, however, it had been, we then think that it was competent to establish the motive on the part of appellant to dispense with Franklin as a possible avenue through which his crimes might be discovered and he prosecuted for their commission.

On the night of the killing the four were traveling in appellant's automobile on a mission connected with the general purposes of their confederation, but at the particular time they were engaged in no activity forming a part of it. While traveling along the highway at a late hour of the particular night, one of the crowd (evidence not disclosing) asked for the car to be stopped to attend to a call of nature, when the deceased and appellant, who were sitting on the right-hand side of the car, got out of it on that side and Mercer made his exit on the opposite side. Almost immediately after appellant put his foot upon the soil, he (according to Mercer) fired a shot into Franklin's head from the rear,

and which killed him instantly. Mercer testified to having seen the killing as occurring in that manner. Copenheaver, who did not get out of the car and who at the time was listening to a radio that was attached to it, described the exit of the parties from the car in the same manner and testified that he heard the report from the pistol and heard the body of Franklin strike the ground and then saw appellant pick it up and place it on the front running board of the car just opposite the driving wheel; that Franklin's body was so heavy that he (appellant) could scarcely handle it, and he asked Mercer to assist him, which he did, and Mercer testified to the same facts; that they then drove in the direction of Lake Herrington, but before reaching the place where they stopped appellant told Mercer to get a rock from a dilapidated rock fence by which they were passing, and which was done. When they got as far as they could drive the car on that side road, appellant and Mercer at his (appellant's) direction took the body toward the lake, and when it was reached the rock was tied to it with a piece of wire that had previously been gotten for the purpose of hauling back an automobile they contemplated stealing in Harrodsburg, and it was thrown into the lake.

Some days thereafter Mercer was arrested, and later on he told about the killing of Franklin, in substance as we have related it, and that information led, through the efforts of divers, to the discovery of the body with the rock tied to it as Mercer had described. Appellant was later arrested, and before he heard of the discovery of the body of Franklin he told the officers that he (appellant) had sent Franklin to Indianapolis for the purpose of getting a machine gun and some former pals of his in preparation for the robbery of a bank at Monticello, Ky., and he denied possessing any knowledge of what had become of Franklin. However, after he was told about the discovery of Franklin's body as we have above stated, he then changed his story and said that he was present when Franklin was killed, but that Mercer alone killed him and without any encouragement, knowledge, consent, or other guilty action on his part. He testified that he was the best friend that Franklin ever had, but at the same time he admitted uttering no surprise at Mercer killing him, as he claimed, nor did he express any sorrow or regrets, and withheld altogether any denunciation of the cold-

blooded crime committed by Mercer, as he claimed. On the contrary, he immediately became active to dispose of the dead body of Franklin in a manner to hide the crime. When asked his reason for such silence on his part, he boldly stated that the code of gangsterism to which he belonged was, in substance, to "be silent and tell nothing," and that he had always observed it. The commonwealth's witnesses, or at least one of them, also testified that upon returning from depositing the body of Franklin in the lake appellant said: "He [Franklin] won't talk now I guess. It will be one that won't talk now." Furthermore the commonwealth proved that appellant, prior to the killing of Franklin, said on a number of occasions, "He [Franklin] would talk and tell everything he knows," and that if he was caught he would divulge the actions of the band and tell everything.

Such evidence was confined exclusively to the actions and doings of the band after the deceased Franklin became a member of it, and who of course was aware of all the depredations that had been committed thereafter. Appellant was naturally apprehensive, and which was grounded upon the fear that Franklin would return home and become the means of uncovering some, if not all, of the crimes that had been committed in which he was present and participated, one of which was the killing of Kaufman We have no doubt but that the evidence of such escapades, being confined to the time after Franklin became a member of the band, plus his expressed determination to sever his relationship with the parties, was admissible for the purpose of establishing motive for killing him on the part of appellant. However, on cross-examination of the commonwealth's witnesses, counsel for defendant who represented him at the trial not only, as we have seen, failed to object to the testimony we have discussed, but likewise developed other crimes and by his client established a criminal career of the latter paralleling to a degree the one pursued by the notorious Dillinger, some of which were told by appellant without being asked to do so by his counsel, and surely neither he nor his counsel should be permitted to complain of that testimony. We, therefore, conclude that ground (1) is totally without foundation.

After Franklin had been enticed and persuaded by appellant to join his band, the latter wrote a letter to

Franklin's mother signing her son's name to it, wherein he informed her that Franklin was working for a drummer and getting $20 a month and his expenses for driving a car for his employer, and there was appended thereto a note from the alleged drummer (E. L. Atkins) which says: "Mrs. Franklin—Your son [Comer] is working for me. In my line of work I have a lot of driving to do as I cover 14 states. I am learning Comer to drive and he has a job with me as long as he cares to stay with me. You need not worry about him as I will take good care of him. E. L. Atkins." It, as supplemented by the positive testimony of the commonwealth's witnesses, clearly establishes that appellant was the absolute commander of the acts and doings of the band and that the other two members, together with the two women they had along with them, were completely subservient to his orders, wishes, desires, and commands. The proof, as we have related it, is more than sufficient to furnish the necessary corroboration of the testimony of Mercer and Copenheaver, even if they could in any wise be classed as accomplices; but, since the killing of Franklin did not occur during the perpetration of a crime for the commission of which the parties were banded together, only the particular perpetrator thereof could be held responsible therefor to the law, unless there was some evidence to show a conspiracy on the part of the members of the gang to commit it, in which case each of them would be responsible as principals. But there is an entire absence of testimony of any such conspiracy. The court notwithstanding submitted to the jury a proper instruction framed under section 241 of our Criminal Code of Practice, and there can be no doubt that the verdict of the jury finding appellant guilty is absolutely sustainable from the evidence, even though Mercer and Copenheaver, or either of them, participated in the crime and were accomplices in its commission.

Ground (2) cannot be sustained for more than one reason. In the first place, the commonwealth, after appellant had testified, asked him about former convictions of felonies and which under our Code provision was competent for the purpose of affecting his credibility, and the court so admonished the jury. Secondly, under our rulings in many comparatively recent cases it was not called upon to do so, since the point was not drawn to its attention by objections to the testimony or

otherwise, as is required in order to call for an admonition of the purpose of the testimony, which we pointed out in the case of McDaniel v. Commonwealth, 185 Ky. 608, 215 S. W. 544, and other cases following it approving the same rule. Counsel cite in support of many if not all of the grounds he discusses in his brief the case of Graves v. Commonwealth, 256 Ky. 777, 77 S. W. (2d) 45, the opinion in which we have carefully read and find that it supports the conclusions hereinbefore expressed and it is by no means authority for the contention that any of the grounds relied on for reversal are meritorious, or furnish any valid reason for disturbing the verdict.

Appellant faces the severest penalty of the law, but he chose a course of conduct that would sooner or later lead directly to it. Comments by us thereon are not called for and they will not be volunteered. Suffice it to say that we find nothing in the record to elicit leniency on the part of any of the enforcement machinery of the commonwealth, and defendant can blame no one for his predicament except himself.

Wherefore, the judgment is affirmed.

The whole court sitting.