# Bates v. Commonwealth.
(Decided Oct. 4, 1935.)

D. I. DAY for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

On January 7, 1935, Henry Bentley was shot and killed. Sam Bates and four others were charged by indictment with his murder. Upon his separate trial, Sam Bates was found guilty, his punishment was fixed at life imprisonment, and he has appealed.

## Evidence Sustains Verdict.

The chief reliance for reversal is that this verdict is not sustained by the evidence. The evidence for the commonwealth is in such sharp conflict with that for the defendant that both accounts cannot be accepted. The jury accepted that given by the witnesses for the commonwealth, so we will state it briefly.

About a month before this homicide Willie Hall, a brother-in-law of Henry Bentley, had a fight with Tandy Bates, a brother of the appellant. The combatants were separated by the deceased and the appellant, and there was thereafter some ill feeling by Sam Bates against Bentley. A few days thereafter Sam Bates and his codefendant John M. Tolliver had some trouble with Bentley near the home of John Collins, and Bentley started into the premises of Collins, whereupon Bates exhibited his pistol and directed Bentley to come back out of there, and called Bentley a "G—— d—— jakelegged s—— of a b——." Bentley replied "I am not afraid of you but you have got it on me" and went on up the road. A few days before the homicide, Mae Tolliver, the wife of Bates' codefendant Carl Tolliver, disappeared, and there was some suspicion she had been

murdered. Bates came to the home of John M. Tolliver, told him of these rumors, and stayed there while Tolliver went to look for her.

Tolliver returned with her about 1 o'clock, in the afternoon of January 7th, and left her talking to a deputy sheriff not far from the Tolliver home. Tolliver came on home, awakened Bates, and soon several men appeared on the front porch of the Tolliver home. Bentley and some five or six others were going up the creek past this Tolliver home. The men on the front porch went inside, and Sam Bates came out on the side porch with his hand on his pistol and accused some member of this passing party of hunting for Mae Tolliver. He was assured they were not. Henry Bentley then came along and Bates said to him: "You said you would not indict me and you did. You are just a G—— d—— lie-swearing son of a b——," and drawing his pistol he began firing at Bentley, who in turn began shooting at Bates. John M. Tolliver began shooting at Bentley from the inside of the house with a rifle. Several shots were fired at the conclusion of which Bentley had died of the numerous wounds he had received, and Bates was found to be severely wounded. The above account is that given by Crans Cook, and practically the same account is given by four or five others.

This testimony is flatly denied by Bates, by his co-defendants, and their witnesses, who tell a very different story, but it was for the jury out of these conflicting accounts to discover the truth, and since it was only a question of who should be believed, we cannot disturb their finding.

### Motion to Discharge the Jury.

While the accused was being cross-examined, the cross-examiner possibly having in mind the case reported in 226 Ky. 318, 10 S. W. (2d) 1099, asked him these questions:

"Q. Have you ever been convicted of a felony, Mr. Bates? A. Yes sir.

"Q. What for? A. Murder.

"Q. How many? A. One."

Counsel for accused did not interpose any objection, but asked the accused this question and obtained this answer: "Have you been pardoned? Yes sir, got

a full and free pardon.'' Thereupon the court gave to the jury a correct and extended admonition as to the purpose and effect, if any, of this evidence. The accused then moved to discharge the jury and to continue the case, the overruling of which he now urges as grounds for reversal.

All this goes back to the questions set out above. If the commonwealth had the right to ask him the questions it did, that is the end of the matter. By provision of section 597 of our Civil Code of Practice it is among other ways provided a witness may be impeached in the following way:

"It may be shown by the examination of a witness, or record of a judgment, that he has been convicted of felony.''

Thus, the commonwealth could have produced the record of the judgment convicting Bates and read that to the jury, which would have shown not only that Bates had been convicted of a felony, but that the particular felony was murder, and that the punishment was fixed at two years in the penitentiary. Since the commonwealth may show that by a copy of the judgment, there is no reason it may not show it by the accused. See Hannah v. Com., 220 Ky. 368, 295 S. W. 159; Bolin v. Com., 206 Ky. 608, 268 S. W. 306. Bates could have been asked if he had been in the penitentiary. Mitchell v. Com., 14 S. W. 489, 12 Ky. Law Rep. 458. In Allen v. Com., 231 Ky. 463, 21 S. W. (2d) 800, it was held a defendant who took the stand could be asked if he had been convicted of a felony, but that his counsel could not ask him about occurrences while in prison. We feel the commonwealth had a perfect right to ask Mr. Bates the questions it did; hence there was no reason for discharging the jury, and his motion to that effect was properly overruled.

A mild complaint is made of the instructions, but no particular errors are pointed out, and from our examination of them we have discovered none.

### The Map.

A map of the premises was made by a skilled engineer from careful measurements. It was made a part of the record and used on the trial, but failure to bring

it here has added materially to our difficulty in understanding this record. In Conley v. Com., 208 Ky. 538, 271 S. W. 566, we called attention to our rule about bringing up plats and about appealing on partia' records. Attorneys should observe those rules.

Judgment affirmed.