# Ingram v. Commonwealth.

(Decided Sept. 29, 1936.)

SHUMATE & SHUMATE and W. L. KASH for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— !Affirming.

Shade Ingram, jointly indicted with Dell Tipton and Douglas Tipton for storehouse breaking, has, on separate trial, been found guilty and sentenced to 5 years' imprisonment. He is appealing. As to appellant, the indictment in a second count charged a former conviction of felony.

Grounds urged for reversal are: (1) Incompetent and prejudicial evidence admitted over appellant's objections; (2) that the court erred in overruling appellant's motion for a directed verdict; and (3) improper and prejudicial statements by the commonwealth's attorney in the closing argument.

Appellant and his codefendants were charged with breaking and entering a store of Mrs. Dixie Kirby in South Irvine and stealing therefrom cigarettes, hosiery, and other articles of merchandise.

The Tiptons entered pleas of guilty, and when introduced as witnesses for the commonwealth, testified in substance that about 11 o'clock on the night of December 17, 1935, appellant came to their home and at his suggestion they accompanied him to the store of Mrs. Kirby. By agreement they were stationed near by to keep a lookout, while appellant went to the store. Neither of them saw him break or enter the building, but heard the breaking of glass, and later went up to the store, where they found appellant with two bags of merchandise, which were carried to their home and the contents divided amongst the three. Jane Tipton testified that she was awakened when her brothers and appellant entered the Tipton home and saw them divide the merchandise. One witness stated that he saw appellant and the Tiptons together about 11 o'clock on the night the crime was committed and another witness testified that some time thereafter appellant asked him if he wanted to buy some hose.

Mrs. Kirby testified that early on the morning of

December 18 she learned that some one had entered her store by breaking out a window pane and at once notified J. W. Henderson, deputy sheriff, who immediately came to the scene. Mr. Henderson picked up the fragments of the broken pane, placed them in a box and put it in the store, where it was kept until the glass was turned over to a fingerprint expert.

H. G. Coffee, a fingerprint expert, testified that Mr. Henderson, the deputy sheriff, turned over to him a box of broken glass and on one of the pieces he discovered a fingerprint which was brought out by approved methods and which when compared with fingerprints of appellant proved to be the thumb of the latter's left hand. These fingerprints were enlarged by photography and the witness pointed out to the jury the points of similarity, and gave as his positive opinion that the thumb print on the glass was that of appellant.

Appellant testified that on the night the store was robbed, he went to Ravenna about 8 o'clock where he remained until 11:30 or 12 o'clock going from place to place with Homer Spivey; that he then went to the home of Mrs. Barnes to call upon Ethel Fox and remained there until 4 o'clock or later and then went to the Tiptons, where he procured some liquor from Jane Tipton; that after leaving Tiptons he went to his home, shaved, and started back to town, but stopped at Mrs. Kirby's store, where a number of people had gathered; that he picked up some of the broken glass that had fallen on the porch in front of the store and set it up against the wall. On cross-examination he admitted that when Mr. Coffee took his fingerprints in the presence of Mr. Henderson he said nothing to them about handling the broken glass and that he stated after Coffee announced that his fingerprint was found on the glass he was not satisfied and was going to get an expert to show it was not his.

Homer Spivey testified that he was with appellant in Ravenna on the night the store was broken into, but that they parted between 10 and 11 o'clock. Ethel Fox corroborated appellant's evidence concerning his visit to Mrs. Barnes' home but Mrs. Barnes, who was at home that night, knew nothing of his visit. Bascom Alcorn testified that he was at Mrs. Kirby's store on the morning the breaking was discovered, and saw appellant "fumbling" with the broken glass, warned him that they

did not want the glass touched and heard them say something about fingerprints.

On rebuttal Mr. Henderson testified that he did not see appellant at the store, but did see Alcorn there after the broken glass had been picked up and put away in the store.

Evidence of the witness Coffee is called in question because he was permitted to state the number of cases pending in which he had been called to investigate fingerprints. In qualifying as a witness on the subject of fingerprinting, Coffee in reply to inquiries stated that he had studied the subject two years at the North-Western University in Chicago, and two and a half years in the police department of Detroit; that in the practice of his calling he had investigated 127 cases in the past year and 16 cases then pending. However, by reference to the record, we find that no objection was made to the evidence in question in the court below, and therefore cannot be made for the first time on appeal.

In reply to a question as to whether the witness had recently testified in a fingerprint case, and to which appellant's counsel objected, Coffee was permitted to state that he testified in such a case at Richmond, Ky., on the previous day. It was proper to show the training and experience of Mr. Coffee in order to qualify him as a witness on the subject of fingerprints, and this was done. The evidence that he had recently testified in such a case was immaterial and possibly incompetent, but since proper qualification had otherwise been shown, it is quite manifest that it did not operate to his prejudice. The evidence concerning points of comparison or similarity in the photographic enlargements of the fingerprint found on the glass and the one actually taken from appellant is vigorously assailed, because the witness Coffee did not make the photographs; but the court properly overruled the objection to the evidence when it was shown that the photographs were made in the presence and under the supervision of the witness

It is further insisted that evidence concerning the fingerprint on the broken glass should have been excluded because for some days before it was turned over to the fingerprint expert it was in a box in the storeroom where it was accessible to clerks and possibly others. By fragments of a revenue license issued to Mrs. Kirby and pasted on the glass and by other evi-

dence the glass was identified beyond question, and the court did not err in refusing to exclude the evidence.

On cross-examination appellant was asked if prior to the former conviction pleaded in the indictment he had been convicted of housebreaking and sentenced to the school of reform and replied in the affirmative. It is argued that objection to this evidence should have been sustained. Proof of a former conviction of felony which is pleaded in the indictment under the habitual criminal statute is admissible as substantive evidence to establish such conviction, otherwise, it is only admissible as bearing on the credibility of the accused as a witness.

Section 597 of the Civil Code of Practice which applies alike in criminal cases, provides that a witness may be impeached by showing that he has been convicted of a felony. Counsel, however, question the competency of this evidence for any purpose because appellant was sentenced to the school of reform rather than to the penitentiary; but under the Code it is the conviction of felony that is material. While the questions asked the witness did not follow the usual form, no prejudicial error was committed in that particular. See Hannah v. Commonwealth, 220 Ky. 368, 295 S. W. 159.

To sustain the second ground on which reversal is sought, it is argued that for reasons above indicated all the evidence of the witness Coffee was incompetent, and with that eliminated, the evidence of the Tiptons as accomplices was not corroborated as required by sections 241, 242 of the Criminal Code of Practice. Since any question concerning the competency of the evidence of Coffee has already been determined adversely to appellant's contention, the recital of his and the other evidence for the commonwealth demonstrates beyond cavil the sufficiency of the corroborating testimony.

In the recent case of Williams v. Commonwealth, 257 Ky. 175, 77 S. W. (2d) 609, it was held that the corroborating evidence was sufficient to meet the requirements if it tended to connect the accused with the commission of the crime. In that case there is an extended discussion of the question and it is pointed out that in some former cases it was virtually held that the corroborating evidence should, apart from the evidence of the accomplice, be sufficient to sustain a conviction. The Williams Case has been consistently followed. See

Walker v. Commonwealth, 257 Ky. 613, 78 S. W. (2d) 754; Mills v. Commonwealth, 259 Ky. 666, 83 S. W. (2d) 32; Lovan v. Commonwealth, 261 Ky. 198, 87 S. W. (2d) 381; Shelton v. Commonwealth, 261 Ky. 18, 86 S. W. (2d) 1054.

By a bystander's bill of exceptions it is shown that in the closing argument the commonwealth's attorney stated that appellant had been convicted three times of a felony when there was only evidence of two such convictions. There is some contradiction in the record concerning the alleged statement, but assuming that the statement in fact was made, it is inconceivable, in the light of the record, that the minds of the jurors could have been prejudiced by it.

Finding no error in the record prejudicial to appellant's substantial rights, the judgment is affirmed.