# Reynolds v. Commonwealth.

(Decided June 1, 1937.)

22

ROSE & STAMPER for appellant.

HUBERT MEREDITH, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

Lloyd Reynolds was indicted, tried, and convicted, in the Owsley circuit court, for unlawfully, forcibly, and feloniously attempting to commit rape upon Lizzie Reynolds, an infant under the age of twelve years, in violation of section 1153, Kentucky Statutes. His penalty was fixed by a verdict of the jury and the judgment of the court at twenty years' confinement in the state penitentiary. He appeals from that judgment.

In his motion and grounds for a new trial, he claims: (1) That the verdict was flagrantly against the evidence; (2) that the court erred in the admission of certain incompetent evidence and sustaining objections to evidence offered in his behalf; (3) that the court failed to give the whole law of the case in his instructions. Counsel, however, virtually waives all grounds except the alleged error in the instructions, that is, the failure of the court to give the whole law of the case. We think the evidence was abundantly sufficient to authorize the verdict of the jury and the judgment of the court. In brief, the testimony is to the effect that Lizzie Reynolds, a girl of about nine years of age, rather small for her age, was sent by her mother on the morning of the 25th day of July, 1936, to a store a short distance from her home, with a hen and ten eggs, for the purpose of exchanging the eggs or selling them and purchasing from the merchant some small articles. She went to the store, sold her hen and eggs for 59 cents, and with the money purchased a bar of soap, a box of macaroni, a can of tomatoes, a bottle of flavoring, and some goods to make the girl a dress. After making the purchases she started to go to her home, and while walking along the highway at about 9:30 o'clock in the morning she

saw the defendant standing on the side of the highway on a bank higher up than she was on the road. The defendant asked her as she passed if she wanted a nickel. She told him yes, and asked him to give it to her where she was. He refused to do so, but asked her to come to him. She then started on toward home along the road. Defendant then came out into the road, took her by the arms, and carried her to a wire fence nearby, put her over the fence, and he got over also. He put her in his lap, with her face towards his, put his tongue in her mouth, put something hard, as she stated, under her bloomers, and was gouging her, and while gouging her he asked her if she was feeling good. She told him no. He then laid her down on her back on the ground and got on top of her and continued jabbing her with something hard about her privates. She cried and asked him to let her up, and, to induce him to let her up, told him that she had to go and take her father his dinner, that he did let her up, but asked her if she knew where the Haunted Hollow was. She told him yes. He then said he would be down there nearly every day, and asked her to come to him. Said he was going to that place at that time. She promised to do so in order to get away from him. He then took her hand and put the nickel in it and told her that every time she came to the Haunted Hollow, where he was, he would give her a nickel. She then went to her home, which was about one-fourth of a mile, carrying the nickel in her hand, and on reaching home, told her mother what had happened and gave her the nickel. The mother became excited and began to call in her neighbors. The neighbors came, and on examining the girl found that she was red about the privates and was somewhat sore, that she remained sore for several days. The mother notified the sheriff and told him what had happened and that he would find the defendant at Haunted Hollow, the place where he told the child that he would be. They examined the bloomers more fully and found what appeared to be blood, or some other wet substance, on them near the privates of the child. The sheriff came and went to the Haunted Hollow, accompanied by another man, and as he came near the hollow, he saw the defendant down in the hollow. The defendant began running. The sheriff hollered at him and asked him to stop. Defendant then asked him what he wanted. He told him he had a war-

rant for him and that he was charged with a very bad offense. The defendant first indicated that he did not know what he meant, but did stop, and, as they got down the hill in the hollow, said to the sheriff that he was going to tell him just what happened. Said he met the little girl as she came along the highway and asked her if she wanted a nickel, the girl then jumped and threw her arms around his neck and hugged him, when she hugged him he might have let his hands fall down upon her legs. Later on the soreness of the child continued, a doctor examined it, and found that she had not been penetrated but showed some redness and irritaton. There was also evidence indicating, on examination of the place over the fence, where the girl said the defendant took her into the bushes, showing marks made by the toes of shoes. There was no evidence adduced that the defendant struck, slapped, or in any way did anything to the child except an attempt to commit the act of rape. Defendant denied that he did anything related by the girl, denied giving her a nickel or touching her at all, denied that he made the statement related by the sheriff, but did state that about 9 o'clock of that day he was at home, that he left his home about that time, when he did so his wife was there, that he put on a new pair of overalls which were perfectly fresh and clean, that he had started when leaving home to go to "Haunted Hollow." To go there he was compelled to cross the highway. When he crossed the highway he saw Lizzie Reynolds; in fact, he said he saw her before he left home, going down the road, when about 150 yards from his home. Said it had been raining hard that morning, the road was muddy, the earth was soft. As he went down the road he met several parties, who testified that they met him. Did not stop when he saw the girl, did not give her a nickel, did not put her over the fence or do anything stated by her. The reason given for going to the hollow was that a few days before he had entered into an agreement with Pearl Reynolds, the mother of Lizzie Reynolds, to meet her at "Haunted Hollow" on that day, that she said she wanted to see him on some particular business but didn't want anyone else to know anything about it. What the business was is not made known. In pursuance of that agreement, he went to the hollow. Said it was a part of the agreement that Mrs. Reynolds was to send her child to the store to purchase some goods

and, while the child was gone, she would talk loud and in that way indicate to him that everything was all right for them to meet. That was his explanation of being in the hollow. He denied running from the sheriff or of stating to him what the sheriff related. Some other proof was offered by the defendant as to the condition of the clothes he wore, that there was no mud on them, nothing to indicate he had been on the ground. This, in substance, is the testimony offered by both the Commonwealth and the defendant.

It will be observed that the testimony was conflicting. The jury were the sole judges as to the truth of the testimony. We see nothing that would authorize the jury to ignore the evidence of Lizzie Reynolds, the nine year old child, whose testimony was corroborated fully by other witnesses, which would indicate that she could not have had any motive to manufacture the story she told. The testimony is abundantly sufficient to justify the verdict.

The instruction complained of is as follows:

"1. If the jury believe from the evidence beyond a reasonable doubt that in this county and before the finding of the indictment herein, the defendant, Lloyd Reynolds, a male person, unlawfully, wilfully, feloniously and forcibly, and with force and arms, did make an assault in and upon one Lizzie Reynolds, a female person, then an infant under the age of twelve years, and forcibly and against the will of the said infant Lizzie Reynolds, did unlawfully and feloniously attempt to commit rape upon the body of the said Lizzie Reynolds and to ravish and to carnally know the said Lizzie Reynolds, they will find the defendant guilty, and fix his punishment by confinement in the State Reformatory not less than five years and not more than twenty years.

"2. If the jury have a reasonable doubt of the defendant being proven to be guilty, they will find him not guilty."

Counsel insists that, as the charge is in violation of section 1153, on the authority of Meade v. Commonwealth, 214 Ky. 88, 282 S. W. 781, 785; Adams v. Commonwealth, 219 Ky. 711, 294 S. W. 151, 152, and Blankenship v. Commonwealth, 234 Ky. 531, 28 S. W. (2d) 774, 776, instructions should have been given under sec-

tion 1158, Kentucky Statutes, for forcibly detaining Lizzie Reynolds against her will for the purpose of having carnal intercourse with her. In those cases such an instruction was authorized because the facts justified it. In the Meade Case, supra, the court said, based on the facts of that case, that the instruction for assault and battery was necessary and also an instruction under section 1158, but said also, in recognition of another rule, that instructions must in every instance be based upon the facts of the particular case. "That being true, it would necessarily follow that it was competent to instruct the jury under the detention statute, provided the evidence was sufficient to authorize it upon the trial, under the indictment which charged only an attempted rape, upon the theory that the former was a degree of the latter, since upon no other ground could it be held that a trial under the indictment charging an attempted rape would bar a prosecution under the detention statute."

In the Adams Case the same rule was applied:

"The defendant admits enough that the question of whether or not he detained this woman with the intention to have carnal knowledge of her should also have been submitted to the jury by proper instructions, and the failure of the court to do so was prejudicial error."

Also in the Blankenship Case, the same rule:

"If the evidence on the trial of an indictment under section 1153 tends to show the detention denounced by section 1158, it is appropriate to instruct the jury under the latter section."

The instant case does not fall under that rule because the evidence did not authorize such an instruction, but the rule laid down in Logsdon v. Commonwealth, 215 Ky. 707, 286 S. W. 1067, and the later case of Wright v. Commonwealth, 267 Ky. 441, 102 S. W. (2d) 376, is applicable. In the Logsdon Case, supra, the court said:

"By the Meade Case it was held that the offense of detaining a woman against her will is a degree of the offense of attempt to rape an infant under the age of 12 years, and that, in cases where the evidence is sufficient to authorize it, upon the trial of one charged with the latter offense, it is

erroneous to omit an instruction under the detention statute. The failure of the trial court in the Meade Case to instruct under the statute, under the facts of that case, was held to be prejudicial and reversible error.

"It is not, however, in every case where a lesser crime is held to be a degree of the crime charged that the defendant is entitled to an instruction under the law relating to the lesser crime, but only in such cases as the evidence of the case warrants it."

The same rule was followed in the Wright Case. The facts in those two cases were of similar import as in the instant case. Where no evidence was offered, as in this case, that tended to establish the violation of the crime as set out in section 1158, no instruction under that section should have been given. All of the evidence is to the effect that the crime committed was in violation of section 1153, attempted rape on the part of the defendant upon the body of Lizzie Reynolds. As said before, she was only nine years old, below the age of puberty, and at an age when she knew nothing of the purpose and consequences of such an act. She had not reached the age of consent; in fact, because of her age and ignorance on a matter of that kind, she would be unable to give consent. We think the instruction given presented properly the issue to be passed upon by the jury.

It is the province of the jury to pass upon facts and to decide as to the guilt or innocence of the defendant. We have no right to disturb their verdict unless the verdict is indubitably wrong or palpably against the weight of the evidence. Sawyer v. Commonwealth, 267 Ky. 388, 102 S. W. (2d) 371, and cases cited therein.

Finding no prejudicial error, the judgment is affirmed.