## Bradley v. Commonwealth.

Nov. 8, 1940.

580

C. B. Wheeler for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

Opinion of the Court by Morris, Commissioner— Affirming.

Aaron Bradley was sentenced to serve five years in the reformatory for killing Laurel Huff. The indictment charged murder, and Carroll Clay was jointly indicted. Appellant was tried separately. On appeal, as is evidenced by his brief, he insists that the court committed errors prejudicial to his substantial rights by:

(1) The admission of incompetent evidence, and

(2) Refusing to sustain appellant's motion for a peremptory instruction of not guilty.

The homicide occurred on the night of November 21, 1939, in a road house or beer joint, politely called, in testimony, a "restaurant," located on Beaver Creek in Floyd County, and operated by Mrs. Bessie Swindle. There were in the restaurant the usual accompaniments —a miniature shooting gallery, a mechanically operated musical instrument, plenty of beer, and the customary crowd. At about ten o'clock, appellant in company with deceased, Laurel Huff and Carroll Clay, came into the place. At this time there were gathered there, Everett Kendrick with four or more companions, male and female; Mrs. Swindle and her two daughters assisting in the conduct of the business, and others.

When appellant and his companions came in, they went to the counter and appellant bought three bottles of beer. Huff came to the counter and received change for a quarter, indicating that he wanted to try some target practice, which consisted of shooting an electric gun at a colored person running with some supposedly stolen chickens; it is called the "chicken thief" game. Huff, Bradley and Clay walked back to the target machine, and some target practice was indulged.

Later the three came back to the counter, and more beer was bought; Kenneth Pennington having joined them after a few moments at the counter. Bradley walked to the booth where the other parties were sitting.

Although appellant was laughing and joking with the seated crowd, there appears to have arisen some trouble between appellant and Everett Kendrick. What caused it is not made clear, but words passed between the two. Appellant then went to the counter, but came back and after further words between another of the party and appellant, the latter reached for and jerked Kendrick. Some witnesses say he struck him; others are not certain.

The two wrestled or struggled on the floor, and a pistol, which several witnesses say appellant drew from his pocket and was holding, fell on the floor. Huff, the deceased, reached down and picked it up. After this there was some wrestling or scuffling between Huff and Bradley, apparently for possession of the pistol. Most of the parties, anticipating trouble, left the room, and some of them say they saw appellant go to an automobile and get a shotgun, and had raised it in an attempt to shoot at some of the parties, or a party who was running up the road. Appellant requested, and the request was complied with, that the parties go back into the restaurant.

It is shown that Huff had retrieved or gotten possession of the pistol, and thrown it under or behind the counter. Bradley, after procuring the shotgun, came back into the room demanding that no one leave until he had recovered his pistol. About this time Huff came from a back door into the room and walked to the water cooler. Bradley approached and cursed him. Huff had the pistol; was holding it up, not pointing it at Bradley, saying: "Here, Aaron." They were four or five feet apart. Without further ado Bradley fired the shotgun twice and Huff fell to the floor, dead, the pistol falling out of his hand.

The foregoing is taken in the main from the testimony of the proprietor, and is corroborated by a number of those who were present during the evening. Appellant's testimony, corroborated by witnesses, chiefly Clay, who went with him and Huff to the road house, was substantially to the following effect:

Appellant lived a short distance from the restaurant. About nine o'clock Huff and Clay came to his home, and remained there about ten minutes; the first time Huff borrowed fifty cents and wanted to borrow a

shotgun. Appellant told Huff that the gun belonged to his brother Joe. Huff then left, but returned in about twenty minutes and said that it was "all right with Joe," and appellant let him have the gun and a "handful" of shells. They talked for a few minutes, and appellant concluded to go down the road to get change for a twenty-dollar bill; deceased and Clay accompanied him.

Appellant decided to stop at the restaurant to buy a bottle of beer, and "maybe get change for his twenty dollar bill." After drinking his beer and after Huff had bought two bottles, he went over to the booth where the Penningtons and Kendrick were seated; began talking to them and asked if they wanted some beer. Kendrick refused, saying he wanted "something stronger." Kendrick appeared sullen, and got up and left the room. Appellant remembered that Huff had left the shotgun about the car, and he was afraid that Kendrick would get it and "come back and kill me." He went out and got the shotgun; came back in the building and walked to the counter. He says he had no conversation with anyone after he returned to the restaurant; he denies that there was any scuffle over the pistol.

He states that he was either standing against the counter or seated on a counter stool, when he heard Huff say: "Aaron, G. D. you, get ready," and he turned around and "Huff had a pistol on me and it was cocked." Huff was coming out of a back room. Appellant denies all the testimony with regard to his demand for his pistol, and that he was not going to leave until he got it. He said that when Huff made the remark, quoted above, he replied: "Larl, what do you want to shoot me for? Don't shoot, I am the best friend you've got," and Huff replied: "By G—— you heard what I said." "When he said that, I had this gun in my left hand and grabbed it up, like this (indicating) and shot two shots as fast as I could, because I thought he was going to kill me, and I wanted to protect myself."

It was shown by the undertaker who removed Huff's body, that there was a cocked pistol under or near his body, and some indefinite proof to the effect that the pistol had belonged to Huff, who had displayed it in a threatening manner at other and prior times, and had made a threat prior to the shooting.

Contention (2) needs little discussion. Appellant in brief contends that the evidence shows that the parties were on friendly terms prior to the killing; this is evident, as appears from the record, certainly up to the point of the scuffle between appellant and Kendrick and later Huff.

There is an absence of proof of previous malice, but we think the jury properly, under all the evidence, returned a verdict of manslaughter, a shooting in sudden affray or heat and passion. It is argued that the proof shows that appellant had no pistol, over which the parties might have had a scuffle. We note that three or more witnesses testified in rather a positive way that Bradley drew his pistol, and was engaged in a scuffle when others were trying to relieve him of it, and one witness testified that she kicked it under or behind the counter. There is no dispute as to the fact that later appellant took the trouble to go outside, procure the shotgun and return to the restaurant, and admittedly fired two charges with caused Huff's death.

The crucial question the jury had to determine was whether or not Huff was holding the pistol up, and saying, "Here, Aaron," or was pointing it at him, and at the time or prior thereto, using threatening language. The sufficiency of the plea of self-defense, it seems to us, hinged on the jury's acceptance of the evidence on this point, and as we have often held, that body was to judge the quality of the evidence, likewise to determine from the evidence whether or not the pistol, which Huff had in his hand at the time, was appellant's pistol, or was one which belonged to Huff.

It is admitted that, as in the great majority of cases, the evidence on important points was conflicting, but the fact that it is the opinion or belief of appellant, as expressed in counsel's brief, appellant made a clear case of self-defense, does not totally destroy the emphatic evidence of the commonwealth that appellant shot a little too quick and was in no real or apparent danger of injury at the time. Appellant stood on his plea of self-defense, and it was incumbent on him to convince the jury that he so acted. Most assuredly there was ample proof by the commonwealth to justify the court in overruling the motions for a peremptory.

On point (1) we find it a little difficult to approach

the matter properly, i. e., of prejudicial error because of the court's alleged ruling on evidence objected to by appellant, and on evidence in his behalf not admitted. Counsel has quoted in brief eight or more pages of evidence, pro and con, but very few of the questions and answers were objected to, or if so, ruled upon by the court.

It would take too much time and space to copy herein the evidence complained of, and such as is claimed to have been rejected. For example, Myrtle Pennington testified at length to matters which transpired out in front of the building after appellant had procured the shot gun. Without objection, she said that he raised it to shoot at some person evidently fleeing the scene. Witness said to him: "That is Dennis (one who had no part in the melee) and he desisted." She was asked: "How was he holding it?" and replied "He had it raised to shoot," and this over objection, with exception. The general complaint here is that her evidence related to an entirely different transaction, and its admission prejudicial.

It may be said that occurring as it did, immediately before the shooting, it was res gestæ; it was admissible for the purpose of demonstrating the state of mind of appellant at the time. He was willing to shoot any person whom he thought had aggrieved him. Shelton v. Com., 224 Ky. 671, 6 S. W. (2d) 1094; Maxey v. Com., 219 Ky. 745, 294 S. W. 507.

A deputy sheriff testified as to the position of the body and condition of the room, when he arrived about two hours later. Among questions not objected to, was a question as to whether at that time Huff was living or dead, answered: "I would imagine he was dead," and also testified that some one said, "Here is a window raised" in an adjoining room. Both answers were given over objection.

It is contended that the court should have admonished the jury as to the effect of the admitted testimony. We fail to see any error here, and in the absence of any argument demonstrating just how the jury migh have been prejudiced, we are not inclined to use our effort in building up a plausible, or any reason.

Here, as in other instances, there was no effort on the part of appellant to eliminate the questioned evi-

dence by objection, or by motion to strike. The evidence, or some of it, was hearsay, but in the absence of specific objection or motion to strike, appellant is in no position to raise the questions here. Bowman v. Com., 261 Ky. 215, 87 S. W. (2d) 355. What is said in regard to this contention applies equally to the discussion of Bessie Swindle's testimony in respect of the "raised window."

Appellant had testified that he lived alone; "batched by himself." Upon being pressed, he said that Lucinda Slone had cooked for him about six months. Objections to this line of questions and answers were overruled (only one objection), and counsel complains that the purpose and effect was to prejudice the jury, in the intimation that appellant was living improperly with the cook. We find it difficult to conclude that the jury was prejudiced by these statements. There was not the slightest reference to any intimacy. The questions and answers were, to say the most, of no relevancy, but we fail to find prejudicial error.

Objection is made because appellant was asked if he had theretofore been convicted of a felony, to which his answer was, "Yes sir." The court promptly admonished the jury: "You will consider that testimony for the purpose of affecting the credibility of the witness and for no other purpose." Argument of counsel is that the jury should have been told that it might "consider this fact as bearing upon the weight of the evidence of the witness and for no other purpose." There is an attempted distinction here, without pointing out any material difference. Civil Code of Practice, Section 597, provides that a witness may be impeached by the party against whom he is produced, by showing that he had been convicted of a felony. The answer was properly admissible, and the question was in correct form. The admonition of the court in the language given was neither objectionable nor prejudicial. Ge Burk v. Com., 153 Ky. 264, 155 S. W. 381. See also in point Hannah v. Com., 220 Ky. 368, 295 S. W. 159; Bates v. Com., 260 Ky. 551, 86 S. W. (2d) 322; Ingram v. Com., 265 Ky. 323, 96 S. W. (2d) 1017.

He was asked: "You saw the shotgun we introduced here in evidence by your brother yesterday, was that the same shotgun?" and he answered, over objection, that it was. Joe Bradley, the owner, had previously

identified the shotgun as being the one loaned to Huff, and used in the shooting. The objection is that the record does not show that the gun was ever put in evidence. We need not discuss the extremely technical point, since it is perfectly clear, and not subject to dispute, that the shotgun was the one borrowed by Huff, and used by appellant in committing the homicide.

Counsel for appellant had carefully shown by witnesses that the shells used in the homicide were loaded with "squirrel or rabbit shot;" that some of the shells given by appellant to Huff, and later found in his pockets, contained buckshot or missiles much larger than squirrel shot. Witness Ryan was asked: "Now what use, would you say, was to be made of a shell containing one ounce balls and these buck shot?" and he answered, "Supposed to kill deer with," though he said he had never heard of deer on Beaver Creek. The objection to this evidence (says appellant) as a whole is that it permitted the jury to infer that the buckshot and one ounce shells were procured by appellant for the purpose of killing decedent, and the insinuation was more "prejudicial than any other kind of evidence." Such an argument is rather a reflection on the intelligence of the jury.

Under all the admitted facts appellant had loaned the shotgun to Huff. His repossession of it was incidental, if not accidental. It might well be asked, if appellant loaned the gun to Huff, with a preconceived idea of killing Huff, or anyone, why did he not load the repeating gun with the buckshot shells? Again we say, the testimony was not relevant, but it was not prejudicial.

It was shown by defense witnesses that the witness Rose had formerly had some difficulty with Huff, and took a pistol from him which looked like the one found under or near Huff after his death. This was thirteen or fourteen months prior to the homicide. The court struck out the testimony on the ground that the date was too remote. He might well have ruled it out on the manifest ground that witness failed to identify the pistol sufficiently when shown him. The court also properly sustained objection to questions and answers which undertook to go into details of the difficulty between witnesses and Huff.

Verne Castle and others made lengthy avowals as to the details of previous difficulties with Huff, after the court had ruled such evidence incompetent. In homicide cases, when the plea is self-defense and proof is of sudden encounter, it is competent to prove that deceased was a man of evil reputation, a dangerous man, or an habitual carrier or user of deadly weapons, but we have not yet held that it is competent to go into detail as to an encounter or transaction between strangers to the accused, for the purpose of proving bad reputation. Ray v. Com., 184 Ky. 800, 212 S. W. 908.

Appellant admitted firing two shots; the issue of fact was whether or not he fired in self-defense, and the jury was the sole judge. They are charged with viewing the evidence and reconciling conflicts. Counsel's argument is that the accused made out a clear case of self-defense, and was entitled to acquittal. His contention would have been correct had it not been for positive evidence that appellant shot without excuse. The evidence was so positive that the court could not, in reason, have done other than pass the case to the jury. It is the duty of the court to consider the evidence in ruling on a motion for a directed verdict. Warner v. Com., 241 Ky. 118, 43 S. W. (2d) 525. But it is the province of the jury to pass upon the question of guilt or innocence, upon the facts as presented, no matter how conflicting the testimony be. Reynolds v. Com., 269 Ky. 21, 106 S. W. (2d) 88.

After a careful reading of the record, we are convinced that accused received a fair and impartial hearing and without substantial error, hence the judgment is affirmed.