## Compton v. Commonwealth.

(Decided Jan. 12, 1937.)

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

Wilmer Compton appeals from a judgment sentencing him to 21 years' imprisonment for the killing

of his wife's nephew, Dick Harrison, at a roadhouse called "Shady Rest," on Sunday evening, September 13, 1936. The only ground relied upon for reversal is the overruling of the defendant's motion for a directed verdict of acquittal.

About 7 o'clock that evening Compton went into Shoe String Alley at Glasgow for Lillian Pedigo, a 14 year old girl, who left with him. He was drinking, if not drunk, and admits having one pistol. Several witnesses testified that he had two in his possession. He was cursing the police officers, who he said wanted to run him out of town, and declared they could not arrest him. He took a pistol from under the seat of his automobile and put it in his pocket.

The deceased, Harrison, and two other young men about 18 years old, who had previously been drinking in a poolroom in town, went to the roadhouse. They were drinking beer and Harrison dropped a bottle on the floor and broke it. Compton, who was part owner of the roadhouse, approached him with a blackjack or short stick and struck at Harrison. He warded off the blow and they began fighting. Harrison was not wearing a coat or vest, and his companions testified that he did not have a weapon on his person. His brother stated that he had never owned one. When the fight began, Harrison's companions fled. out the door and soon heard shooting inside. When a deputy sheriff and another officer arrived, Cook, a bar tender or waiter, first declared there had been no trouble there, but the officers found Harrison's body in a clump of bushes and over a wire fence about 150 feet from the building. The trampling of weeds indicated that several persons had been around there. Then Cook gave the officers a pistol which he procured from behind the counter, saying he had picked it up from the floor and that it must have belonged to Harrison. It had one empty shell and four loaded bullets in it. After first denying that there was any other weapon there, on direction of Compton, he obtained an automatic pistol from a suitcase in a back room. Compton told the officers that he had fired at Harrison three or four times and had shot him in self-defense. The body had a bullet hole through the right arm and another entering on the left side had gone through back of the heart, ranging slightly down-

ward. Two bullets were taken from the body. He also had suffered several cuts and bruises in the back of his head. Physicians expressed the opinion that it was possible, but not probable, that a man wounded as was Harrison could have gone to the place where his body was found after being so wounded. Only one bullet hole was located on the building.

The defendant's evidence is that Harrison had broken a glass and bottle and, when Compton remonstrated, Harrison cursed him. He refused to leave when ordered and Compton caught hold of him, and the fight followed. The men fell to the floor and Gilliam, the defendant's partner, first pulled Harrison from off Compton and then Compton from off Harrison. Harrison then got up on a seat or bench, drew a pistol from his belt, and fired at Compton, who shot back at him twice. A furrow was cut in Compton's head by a bullet, he testified; but later his testimony is that he was not sure that Harrison had shot him. Harrison threw his pistol down and ran out the door. Gilliam substantially corroborated the defendant, but stated he did not know who fired first. Cook and several young women join in the corroboration. The Pedigo girl's testimony is much more favorable to the accused than his own, but she was impeached, as were some of the other witnesses. The defendant had been previously convicted of a felony and his bad reputation was established.

In rebuttal it was proved that about two weeks before the homicide the defendant had purchased the pistol which he claimed belonged to the deceased and that he had it on the previous Friday night. It is observed that there is no testimony that any one picked up the pistol where it is said Harrison threw it on the floor or identified it as being the one claimed to have been fired by him. There was some evidence of contradictory statements made by the accused on the night of the tragedy, and the doctors raise a very serious doubt as to the injury in his head having been caused by a bullet.

The argument is made in support of the point that a peremptory instruction of not guilty should have been given, that no one testified to having seen the appellant shoot the deceased, and that the only proof of it is the statement made that night by the defendant that he had done so. While the evidence introduced in chief was in

our opinion sufficient to take the case to the jury, the entire picture uncovered by the evidence introduced by the defendant, supplying as it does some explanation of what would otherwise be left to inference or conjecture, must be regarded in ruling on the point that a peremptory instruction of not guilty should have been given. Eaves v. Com., 241 Ky. 140, 43 S. W. (2d) 528. Where one admits the shooting and killing of another and undertakes to justify it and there is evidence tending to disprove the defendant's story, the case is for the jury to decide. Jackson v. Commonwealth, 248 Ky. 47, 58 S. W. (2d) 263. The fact that the defendant killed a man, accompanied by evidence that the deceased was not armed and other circumstances refuting the claim of self-defense, not only authorized the submission of the case to the jury, but sustains the verdict. Bourne v. Commonwealth, 234 Ky. 842, 29 S. W. (2d) 561.

The judgment is affirmed.