## FRILEY v. COMMONWEALTH.

Court of Appeals of Kentucky.
Feb. 20, 1953.

Vernon Faulkner, Hazard, for appellant.
J. D. Buckman, Jr., Atty. Gen., and Zeb
A. Stewart, Asst. Atty. Gen., for appellee.

SIMS, Chief Justice.

Appellant, Rose Friley, was tried on an indictment charging her with willful murder. She was convicted of voluntary manslaughter and her punishment fixed at confinement in the penitentiary for ten years. In seeking a reversal of the judgment she argues but two grounds: (1) The court erred to her prejudice in his rulings on evidence; (2) the instructions did not give the whole law of the case.

The tragedy occurred about 8 o'clock on the evening of September 15, 1951. In the afternoon of that day appellant and the wife of Taylor Cornett, Jr., the man who was killed, "had some words." The Friley

and the Cornett families lived just across the road from each other in the mining camp of Four Seam in Perry County. Cornett arrived at his home considerably under the influence of intoxicants a few minutes before the killing. His wife told him of the "fuss" she had with appellant. Cornett went across the road and at a point in front of appellant's home, called for her husband. When informed he was not at home, Cornett called for appellant and threatened "to come in there and drag me out in the road and beat my brains out", so she testified.

There was a wire fence 4 or 4½ feet high around appellant's home and Cornett was in the road leaning against this fence. Appellant's version of the killing was that when Cornett first called her, she turned out the lights in her home, pulled down the shade and picked up a shotgun. She asked Cornett a time or two to go away from in front of her house, telling him she would shoot him if he attempted to come on her porch. To this Cornett replied, "Rose, honey, you wouldn't shoot me." With these words Cornett started to get over the fence and she shot him.

In the house with appellant were her two small children, a 15 year old neighbor girl, Thelma Dixon, and appellant's 17 year old nephew, John B. Riley. According to Thelma, appellant shot Cornett immediately after he uttered the words, "Rose, honey, you wouldn't shoot me," and this witness mentioned nothing about Cornett attempting to get over the fence. John B. Riley heard the words just quoted, but had his back turned and did not see the actual shooting. He did not testify how near it followed the speaking of the quoted words, although he stated appellant fired 4 or 5 seconds after she last told Cornett to go away. This witness stated Cornett when shot was leaning against the fence with his hands on a post. Cornett was shot in the head, fell in the road and no weapons were found on or near his body.

■ The first ruling on evidence of which appellant complains is that the court refused to let Billy Russell, a companion of Cornett, testify as to what Cornett said when he arrived home just before he was killed. No avowal was made as to what Russell would testify, therefore we cannot say the court erred in excluding this testimony. Hill v. Com., 191 Ky. 477, 230 S.W. 910; Hall v. Com., 229 Ky. 646, 17 S.W.2d 751. In refusing to admit this testimony the judge remarked, "Why do you want to ask him things that have nothing to do with the case?" To this the attorney replied, "I understand my case." The Court: "You may think you do, I'll decide what's competent." It is argued that these remarks by the court were prejudicial to appellant. With this we cannot agree. All that we can make of the colloquy between the judge and counsel is that each seemed to be somewhat out of patience with the other. However, the court's remarks could not have prejudiced appellant in the minds of the jury.

■ Appellant next insists the court erred in not letting her testify why she was afraid of Cornett. By way of avowal, she stated: "Well, he had went in on them two other women and had hit one in the head with a beer bottle and I figured if he went in on them he would come in on me, and I was just trying to protect me and my children. They was behind me in the house." Evidently, appellant was attempting to prove that Cornett was a dangerous man and she knew it. Her answers were argumentative and incompetent. It would have been competent for her to have proved his reputation as being a dangerous man, but it was not competent for her to show another specific act of violence on his part, or to argue from it that he might attack her. Ray v. Com., 184 Ky. 800, 212 S.W. 908; Bradley v. Com., 285 Ky. 579, 148 S.W.2d 737.

■ Clearly, the court was right in not permitting appellant to prove the condition of the fence the morning after the shooting until she had shown its condition immediately prior to the killing.

■ Appellant was permitted to show that some thirty minutes before she killed Cornett he was at Stanley's roadhouse drunk and armed with a pistol. But she complains the court excluded her offered

testimony that "he jerked it on Burchell Roberts." This ruling was proper. Any trouble Cornett might have had shortly before the shooting, of which appellant had no knowledge, could have had no bearing on her guilt or innocence in killing him, and such was not competent to show Cornett's reputation. Ray v. Com., 184 Ky. 800, 212 S.W. 908.

◾ The Court properly excluded testimony that Willie Stanley returned Cornett's pistol to him when Stanley took Cornett home. The reason this testimony was excluded was because appellant did not state Cornett was armed when she shot him. Even if it should be admitted for the sake of argument this testimony was competent, its exclusion certainly was not prejudicial to appellant since she did not contend Cornett was armed when she fired the fatal shot.

◾ It is next insisted by appellant that she was entitled to an instruction on the defense of her home, citing Carroll v. Com., 221 Ky. 557, 299 S.W. 183. There, deceased was demanding admittance into the home of accused and when she refused to open the door, he broke it down and was shot by her just as he entered. The facts distinguish the Carroll case from the instant one, since here Cornett was making no effort to enter appellant's home, but only threatened to do her personal violence. The instruction the court gave told the jury to acquit appellant if at the time she shot Cornett "she believed and had reasonable grounds to believe that either she, the defendant, or Thelma Dixon, or John B. Riley or her two children, or any member of her family, or any one else in, about or around her home were then and there in danger of death or the infliction of some great bodily harm at the hands of Cornett."

This instruction was more favorable to appellant than to which she was entitled, as she claimed to have shot in her own self-defense and not in the defense of anyone else, or of her home. In effect, it authorized her to defend her home when it authorized her to shoot to defend "anyone, in, about or around her home." In Hendrick-

son v. Com., 232 Ky. 691, 24 S.W.2d 564, is found an instruction on defense of home which we said should be given on another trial of that case. Reference to that opinion and the instruction in 24 S.W.2d on page 567 thereof will show that appellant here was not entitled to an instruction on the defense of her home.

Perceiving no errors in the record prejudicial to appellant's substantial rights, the judgment is affirmed.