**Joe LEE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 6, 1959.

John J. Tribell, Pineville, for appellant.

Jo M. Ferguson, Atty. Gen., H. D. Reed, Jr., Asst. Atty. Gen., for appellee.

MONTGOMERY, Chief Justice.

Joe Lee shot and killed Retha Sizemore. He was convicted of voluntary manslaughter and sentenced to serve twenty-one years in prison. He urges as grounds for reversal that: (1) His motion for a directed verdict of acquittal should have been sustained; (2) the giving of a manslaughter instruction was erroneous; and (3) the court erroneously refused to permit an adjournment in order that the appellant might secure the attendance of certain witnesses and that the refusal to adjourn coerced the jury into finding a hasty verdict without proper deliberation.

It was the theory of the prosecution that appellant killed without justification and planted a knife in the hand of the victim to substantiate his plea of self-defense.

Retha Sizemore, also known as Patsy Brummitt, and the appellant had been living together, unmarried, for two years prior to the killing. They lived in a four-room building referred to as the "Old Fuzzy Duck" on the Harlan Road. Appellant operated a junk store there.

About midnight on April 13, 1958, appellant appeared at the Bell County Jail and informed the jailer that he had killed Retha Sizemore. The jailer locked him up after

taking from him a half pint bottle partially filled with whisky. He said appellant seemed intoxicated.

The sheriff and coroner made an investigation. The victim's body was found in the locked building where she had been living. She was described as being a small woman, weighing 105 pounds. The body was lying on the floor of the front room of the building. Her feet were near a soft drink cooler and were "kindly drawn back under her a little bit." She was lying on her right side and back. Her right arm was extended. A 7-inch hunting knife was found in her right hand, with the blade pointed outward. The coroner said that rigor mortis would cause her grip on the knife to tighten.

The body was lying beside "quite a bit of blood." The coroner described the wounds thus: "The shot gun blast had pierced the top part of the left arm muscle above the elbow and had gone from there into the left side and through the stomach and kidneys and had cut the aorta in two, wihch caused death."

There was vomit containing "pieces of reddish flesh" on the cooler, some on the floor, and some on the victim's shoes. The coroner testified that she "had pitched backwards" from where she had vomited at the cooler to where she fell on the floor. The sheriff was permitted, without objection, to testify that the person who had vomited had been "standing or partly standing" at the cooler at the time.

A 12-gauge shotgun with a 20-inch barrel was found leaning against the wall about eight feet from the body. It contained one empty shell and four or five unfired shells.

The sheriff testified concerning his experience with firearms. He said that the shot from a short barrel would spread more rapidly than the shot from a long barrel. He described the hole blown in the body as "about the size of the top of a teacup," and gave as his opinion that the shotgun was about eight or ten feet from the body when fired.

The coroner said that he could not tell whether Retha had been drinking. Several half pint bottles of whisky were found in the building; some were empty.

The sister and nephew of the victim testified that appellant had come to their home at night about a week and a half before the killing. He was looking for Retha. On that occasion, they testified, appellant threatened to kill Retha when she returned.

Appellant testified that on the night of the killing the victim had been drinking whisky, was in a belligerent, quarrelsome mood, called him vile and abusive names, and threatened to kill him. He said that he grabbed the shotgun and shot her when she pulled the knife and advanced on him. Appellant and other witnesses testified that the victim had a bad reputation for peace and quiet and had threatened and attempted to kill appellant on several occasions shortly before she was killed.

■ Appellant urges that the evidence is all one way and makes out a case of self-defense and, therefore, his motion for a directed verdict of acquittal should have been sustained. Minix v. Commonwealth, 266 Ky. 801, 100 S.W.2d 825. The rule is that even though a defendant who is the only eyewitness to a killing makes out a case of self-defense, the trial court may properly refuse to instruct peremptorily to find a verdict for the defendant where some of the physical facts and other testimony contradict the defendant's testimony and cast some doubt upon the accuracy and truthfulness of it. Ward v. Commonwealth, Ky., 287 S.W.2d 601; Richie v. Commonwealth, Ky., 242 S.W.2d 1000; Carson v. Commonwealth, Ky., 239 S.W.2d 262; Foster v. Commonwealth, 301 Ky. 225, 191 S.W.2d 220; Compton v. Commonwealth, 266 Ky. 803, 100 S.W.2d 813; Hatfield v. Commonwealth, 264 Ky. 721, 95 S.W.2d 562. The prior threat by appellant, extreme force, and peculiar circumstances surrounding the condition of the body and knife were sufficient to justify submission of the case to the jury.

■ Appellant contends that it was error to have given the voluntary manslaughter instruction. It is contended that the evidence showed either murder or justifiable homicide and that there was no evidence on which to base a voluntary manslaughter instruction. Reliance is placed by appellant on Daggit v. Commonwealth, 314 Ky. 721, 237 S.W.2d 49. The Daggit case is not in point, since its reversal was primarily placed on the ground that it was error to convict a defendant of voluntary manslaughter who had been charged with being an accessory before the fact to murder. Another person had confessed to the premeditated killing, implicating Daggit as a co-conspirator.

In a criminal case, it is the duty of the court to prepare and give instructions on the whole law. This general rule requires instructions applicable to every state of case covered by the indictment and deducible from or supported to any extent by the testimony. Stanley's Instructions to Juries, Volume 3, Section 760, page 4, and cited cases. The propriety of giving a manslaughter instruction is controlled by a determination of whether there is any evidence to show that the killing may have been done without previous malice and in sudden heat and passion or in sudden affray upon provocation ordinarily calculated to excite the passions beyond control. This is true regardless of whether the defendant seeks the manslaughter instruction or the court gives it as a part of the whole law.

The trial court in arriving at a decision on whether to give the manslaughter instruction must consider the circumstances proved. Where there is no room for any possible theory except that the defendant is guilty of murder or is innocent, there is no reason to give a manslaughter instruction. Davenport v. Commonwealth, 285 Ky. 628, 148 S.W.2d 1054; Canada v. Commonwealth, 281 Ky. 641, 136 S.W.2d 1061. The converse is also true. If a reasonable inference may be drawn by the jury from the evidence, an instruction must be given for the guidance of its members. As was said in Stidham v. Commonwealth, 221 Ky. 49, 297 S.W. 929, 931:

"If the evidence for the commonwealth was true, the jury were warranted in inferring that a difficulty had occurred between the defendant and his wife, and that in this difficulty she was killed. At least there was some evidence of this, and the instructions as given by the court were proper. Rutherford v. Commonwealth, 13 Bush 608 [76 Ky. 608]."

The evidence as to whisky at the premises and on the appellant's person and his intoxication when arrested was sufficient from which the jury might have inferred that he was drunk when he killed Retha. Drunkenness may show an absence of malice. Although it does not excuse the crime, intoxication of a defendant may be considered in determining the degree of the homicide. Long v. Commonwealth, Ky., 262 S.W.2d 809; Henderson v. Commonwealth, 72 S.W. 781, 24 Ky.Law Rep. 1985. The evidence of intoxication of both parties, the extreme force used by appellant in repelling the alleged attack by the victim, and the peculiar circumstances involved justified the giving of the manslaughter instruction.

■ Appellant complains that the court's failure to recess the trial from 7:45 p. m. until the following morning prevented him from securing the attendance of three witnesses who had been present earlier that day. Only one of the witnesses had been subpoenaed. It was averred that each witness would testify to a specific act of violence by the victim toward someone other than appellant and that each would testify to her bad reputation for peace, quiet, and good order. Evidence as to the isolated acts of violence not connected with the homicide was inadmissible. Howard v. Commonwealth, 198 Ky. 453, 248 S.W. 1059. The reputation evidence was cumulative.

Further complaint is made that the refusal to recess was a form of coercion, in

that the jurors had been trying the case throughout the day and were forced to reach the verdict with tired minds. The continued trying of a case into the night is not uncommon and is frequently dictated by necessity. There is no merit in the argument. Tarrence v. Commonwealth, Ky., 265 S.W.2d 40. The court was not in error in refusing the recess.

Judgment affirmed.