James Herbert PARRISH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

April 10, 1979.

Rehearing Denied July 3, 1979.

Frank E. Haddad, Jr., Louisville, William E. Rueff, Jr., Morgantown, for appellant.

Robert F. Stephens, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

James Herbert Parrish was convicted of wilful murder, KRS 507.020, and sentenced to a term of imprisonment of twenty years in accordance with KRS 532.060. Parrish appeals; we affirm.

On the day of the incident, Parrish observed Billy Johnson, the victim, leaving a filling station near Parrish's home. Parrish followed Johnson down the road. After Parrish blinked his lights at Johnson, both men stopped their vehicles, Johnson's car several feet in front of Parrish's pickup truck. A passerby saw Johnson standing

near the cab of the pickup truck. The passerby stopped at a place of business a few hundred feet down the road and was informed by the proprietor that he had heard gunfire. Both men then proceeded back down the road where they found Johnson's body lying near the front of the pickup truck. Parrish was standing nearby. When a deputy sheriff arrived on the scene, Parrish told him "I just shot him." Another passerby stopped shortly after the shooting, and was told by Parrish when asked why he had shot Johnson, that Johnson was going to pull him out of his pickup truck and beat hell out of him. This witness saw no weapon on or near Johnson's body. Another witness who stopped at the scene was told by Parrish that he had stopped Johnson to talk about "family affairs" and that Johnson threatened to pull him out of his pickup truck and give him a "whipping."

Parrish testified that a man named Willis had stated to him that Johnson had told Willis he had been going with Parrish's sister-in-law and wife. Parrish testified that several days later, on the day of the incident, he followed Johnson from the filling station and after stopping Johnson to talk with him, Johnson alighted from his car and came over to his pickup truck. Parrish testified that he repeated to Johnson what Willis had told him and that Johnson threatened to drag him out of the truck and "whip the hell" out of him. He testified that Johnson started coming at him through the door of the pickup truck with a knife in his hand. Parrish testified that he then shot and killed Johnson in self-defense. The knife, according to Parrish, was found in his pickup truck the following day.

■ First Parrish complains of inflammatory and prejudicial remarks during closing argument. The Commonwealth's attorney told the jury that a nephew of Parrish could have placed the knife in the pickup truck. From the evidence it appears that the nephew and the deceased worked at the same meat packing company, and the same type knife (boning knife) found in the pickup truck was issued to the employees. In view of the circumstances of the finding of

the knife the day following the incident, we are of the opinion that the remarks of the Commonwealth's attorney were reasonable inferences from the evidence which the jury might consider if it so wished. *Hunt v. Commonwealth*, Ky., 466 S.W.2d 957 (1971).

■ The remark to the jury that the defense was objecting for the reason that the remarks were "hurting" is an impropriety; however, the trial court directed counsel to get on with the case. In our view the impropriety did not unfairly prejudice Parrish, nor do we consider that any of these remarks so inflamed the jury as to deny Parrish a fair trial.

■ The next assignment of error is that the trial court permitted the deputy sheriff, who first arrived on the scene, to relate his conversation with Parrish that "he made the statement that he did it and his reasons, *that he would rather not tell.*" The trial court had previously ruled that this testimony was admissible with a caution to the Commonwealth not to make any comments.

Parrish argues that permitting this testimony into evidence is a breach of the rule laid down by the U.S. Supreme Court against commenting on a defendant's Fifth Amendment right to remain silent. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The simple answer to Parrish's argument is that he did not remain silent. He was not in police custody and made various statements to bystanders and to the deputy sheriff. In view of the entire testimony of the deputy sheriff, we are of the opinion there was not a violation of the *Doyle* rule. Parrish did not stand mute; nor did he claim his Fifth Amendment privilege; neither was there an accusation at the time. In short, he responded to a natural question of "What happened?" posed by a deputy sheriff who arrived on the scene. His reasons for his act were given to other bystanders, and these reasons were consistent with his defense at trial.

■ Parrish testified that he was aware of the deceased's reputation for being a person of violent character. He then at-

tempted to testify as to specific incidents of violence. The trial court declined to admit this testimony and Parrish argues error.

The rule in this jurisdiction is that once the defendant has adduced some evidence that he acted in self-defense, "Proof of the violent and dangerous character of deceased can only be made by evidence of his general reputation in the community for such character, and not by evidence of specific acts or general bad conduct, or of isolated facts, which are not connected with the homicide." *Roberson's New Criminal Law and Procedure,* Second Edition, § 489, p. 657. See also *Amos v. Commonwealth,* Ky., 516 S.W.2d 836 (1974), and *McGill v. Commonwealth,* Ky., 365 S.W.2d 470 (1963).

■ Parrish argues that he was entitled to a change of venue for the reason of pre-trial publicity. However, our review of the record shows that, at the hearing on the motion, conflicting testimony was introduced, and there is no suggestion that the trial court abused its discretion in denying the change of venue.

■ Last Parrish argues that KRS 533.-060 is unconstitutional. The trial court refused to consider probation for Parrish in accordance with KRS 533.060(1), which provides:

"When a person has been convicted of an offense or has entered a plea of guilty to an offense classified as a Class A, B, or C felony and the commission of such offense involved the use of a weapon from which a shot or projectile may be discharged that is readily capable of producing death or other serious physical injury, such person shall not be eligible for probation, shock probation or conditional discharge."

We are of the opinion that the mandatory provisions of KRS 533.060 do not inflict cruel and unusual punishment, nor do these provisions deny Parrish equal protection of the law.

It is the province of the General Assembly to fix punishment for a violation of the criminal statutes. By analogy, if a sentence of life imprisonment without benefit of parole is constitutional, as was decided in *Green v. Commonwealth,* Ky., 556 S.W.2d 684 (1977), then we fail to see the cruel and inhuman argument of Parrish on the lesser penalty here. We are of the further opinion that the General Assembly by imposing the restriction of no probation for an offense involving a firearm, as here, makes a reasonable classification of weapons used in the commission of crimes. Firearms are inherently more dangerous to human life than other weapons, and the General Assembly has expressed a public policy in the terms of KRS 533.060 which does not violate either the Constitution of the United States or the Constitution of Kentucky.

The judgment is affirmed.

All concur.