Lewis Earl THOMPSON, Jr., Movant,

v.

COMMONWEALTH of Kentucky, Respondent.

Supreme Court of Kentucky.

June 15, 1983.

Nicholas N. King, Franklin & King, P.S.C., Louisville, for movant.

Steven L. Beshear, Atty. Gen., Linda Carnes Wimberly, Asst. Atty. Gen., Frankfort, for respondent.

## CERTIFICATION OF THE LAW

GANT, Justice.

█ At the outset of this opinion, we note that this case arises from a certification of the law by the Court of Appeals on application therefor by the Commonwealth. Discretionary review was granted by the court, which we have chosen to honor despite the fact that the acquitted movant herein has no standing to seek review by this court. There is simply no issue in which this movant has any interest, nor does our law extend to any acquitted person the right of certification of questions of law.

§ 115 of the Kentucky Constitution provides that "... the commonwealth may not appeal from a judgment of acquittal in a criminal case, other than for the purpose of securing a certification of law ..." The Constitution is silent concerning which appellate court has jurisdiction to accomplish this end. The only rule relating to certification of questions of law is CR 76.37, which empowers the Supreme Court of Kentucky to answer questions of law certified to it by the Supreme Court of the United States, federal Circuit Courts of Appeal, and the highest appellate courts of other states.

Customarily, certifications of questions of law are issued by the highest court of the state. The basis for this is obvious, as intermediate courts are bound by applicable precedents of the highest court and without power to overrule them. *See* SCR 1.030(8)(a). To apply first to the Court of Appeals and then to this court constitutes an exercise in duplication and a waste of time and effort.

█ Aware that the Commonwealth should have certified the questions here represented to this court, *ab initio;* realizing that this movant has no standing before us; and hoping that this problem will not appear again, we affirm the Court of Appeals and adopt and adapt its opinion, to-wit:

"The [Commonwealth] requests this Court to certify the law with respect to three separate rulings made by the trial court. Such involve: (1) the admission into evidence of the prior criminal record of the victim to show his propensity for violence and aggression; (2) the admission into evidence of the prior criminal record of an individual possibly present at the time of the shooting, but who did not testify or appear at the trial; and (3) the submission to the jury of instructions allowing the defense of self-protection to charges of second-degree manslaughter and reckless homicide.

"In April of 1981, Lewis Earl Thompson, Jr., was indicted by the Jefferson County Grand Jury and charged with murder. KRS 507.020. As amended, the indictment charged him with "intentionally and wantonly causing the death of Danny Carman by shooting him with a pistol." The shooting occurred early in the morning of November 20, 1980, outside the Left Field Lounge as [Thompson] attempted to break up a fight between several individuals, one of whom was the victim. After [Thompson] intervened, he struggled with the victim, and shot him at point-blank range. At the time of trial, [he] pleaded self-defense. Subsequent to a trial by a jury, [Thompson] was acquitted on all charges.

"Initially, the [Commonwealth] argues that the trial court erred, as a matter of law, in admitting into evidence prior criminal convictions of the victim. Such evidence was admitted to show the victim's character for violence and aggression. In an in-chambers hearing held on the [Commonwealth's] motion in limine that no reference be made to the victim's prior criminal convictions, the trial court stated that such evidence was relevant and admissible in that it went to the question of who was the aggressor.

"Notwithstanding the trial court's logic, it is the settled law in this jurisdiction that evidence of prior specific acts are inadmissible to show a victim's character for violence or aggression. In *Parrish v. Commonwealth,* Ky., 581 S.W.2d 560 (1979), the Court stated as follows:

"Parrish testified that he was aware of the deceased's reputation for being a person of violent character. He then attempted to testify as to specific incidents of violence. The trial court declined to admit this testimony and Parrish argues error.

"The rule in this jurisdiction is that once the defendant has adduced some evidence that he acted in self-defense, 'Proof of the violent and dangerous character of deceased can only be made by evidence of his general reputation in the community for such character, and not by evidence of specific acts or general bad conduct, or of isolated facts, which are not connected with the homicide.' *Robertson's New Criminal Law and Procedure,* Second Edition, § 489, p. 657. See also *Amos v. Commonwealth,* Ky., 516 S.W.2d 836 (1974), and *McGill v. Commonwealth,* Ky., 365 S.W.2d 470 (1963).

Neither the law in this jurisdiction, nor the Federal Rules of Evidence, allow a defendant to prove character by evidence of prior specific acts. FRE 404(a)(3), (b). Such can only be proved by evidence of the individual's reputation in the community, not by personal opinion, nor by specific acts of conduct. *See* Lawson's, *Kentucky Evidence Law Handbook,* § 2.15(2), p. 16 (1976). As such, the trial court erred in admitting into evidence prior criminal convictions of the victim.

"Secondly, the [Commonwealth] argues that the trial court erred in introducing evidence of prior criminal convictions of an individual who did not testify but was alleged to have been present at the scene of the shooting. It argues that such evidence was not only inadmissible, but irrelevant. We agree. It is a fundamental rule of evidence that evidence must be relevant to be admissible. *O'Bryan v. Massey-Ferguson, Inc.,* Ky., 413 S.W.2d 891 (1967). In that the individual was neither indicted, nor a witness at the trial, evidence of his prior criminal convictions was irrelevant. Furthermore, such evidence was inadmissible. *See Abney v. Commonwealth,* Ky.App., 588 S.W.2d 714 (1979). On the contrary, such evidence may have been highly prejudicial to the Commonwealth.

"Finally, the [Commonwealth] argues that the trial court erred in including in its instructions for second-degree manslaughter and reckless homicide the defense of self-protection. It argues that a self-protection instruction does not apply to wanton or reckless homicide in light of KRS 503.030 and 503.020. Specifically, it urges this Court to reconsider its decision in *Kohlheim v. Commonwealth,* Ky.App., 618 S.W.2d 591 (1981), in light of the 1974 commentary to KRS 503.120. This, we decline to do. As such, we hold that the trial court, under the facts presented to it, acted correctly."

STEPHENS, C.J., AKER, GANT, STEPHENSON and VANCE, JJ., and VIRGINIA COLLINS BURBANK and ASA M. ROUSE, Special Justices, sitting.

All concur except VIRGINIA COLLINS BURBANK and ASA M. ROUSE, Special Justices, who dissent and file herewith separate dissenting opinions.

VIRGINIA COLLINS BURBANK, Special Justice, dissenting.

Since I reach a different conclusion, I must report my reason. The law is well-settled in Kentucky that evidence bearing on the character of the victim is admissible in limited circumstances, *Lucas v. Commonwealth,* 141 Ky. 281, 132 S.W. 416 (1910); *Johnson v. Commonwealth,* Ky., 477 S.W.2d 159 (1972). It is permitted in cases of self-defense to justify the action of the accused by proving the violent reputation known to the accused prior to the commission of the act for which he is charged. Lawson, *Kentucky Evidence Law Handbook,* Section 2.10(c); *Lee v. Commonwealth,* Ky., 329 S.W.2d 57 (1959); *Wooten v. Commonwealth,* Ky., 478 S.W.2d 701 (1972), *Amos v. Commonwealth,* Ky., 516 S.W.2d 836 (1974).

It appears to me, however, that there are numerous cases in which the victim may be the aggressor, but his violent character and reputation therefor may not be known to the accused. In such instances, the jury is entitled to all material facts from which it

can draw logical conclusions. The language of an early Kentucky case, *Duke v. Commonwealth*, 191 Ky. 138, 229 S.W. 122 (1921), suggests to this writer that evidence of a prior criminal conviction of the victim would have been admitted to show who was the aggressor, but for the incompetent manner in which it was offered. Justice Hurt, speaking for a unanimous Court, stated:

"The ruling of the Court in excluding testimony offered by him of which the accused complains is that he offered to prove by the clerk of the court that prior to the killing of Wells (the victim) ... was indicted, convicted and committed to the penitentiary for the crime of accessory before the fact to the crime of shooting and wounding the accused... [T]he clerk had [no] personal knowledge of the shooting and wounding of the accused or the connection of the deceased with it, and the offered evidence was doubtless excluded, and properly so, upon the well-settled principle that the best evidence of a fact must be offered, and anything less than the best evidence within the power of a party to produce is not competent, and the only way to prove the existence and contents of records which are in existence is the production of same. The bill of exceptions then recites that the appellant offered as evidence an indictment accusing the deceased of counseling and advising and paying Elgin David to willfully and maliciously shoot and wound the accused, but upon objection the reading of the indictment as evidence was excluded by the court. The indictment is copied into the bill of exceptions and it shows that the deceased was indicted for such a crime, and the name of the accused, as well as the names of five or six other persons, were indorsed upon it as witnesses. The record which must necessarily have been made as to the disposition of the indictment was not offered,

nor is it embraced in the bill of exceptions. Hence the one question before us is the admissibility of the indictment as evidence alone. It is very clear that an indictment, which is a mere accusation, would not be competent evidence to prove anything alleged in it or anything beyond its own existence."

The rule of relevancy protects against misuse of such evidence and limits its use to prior convictions of crimes that are violent. Lawson, *Kentucky Evidence Law Handbook*, Section 200. Moreover, a proper admonition to the jury will reduce the hazard of prejudice resulting from its introduction.

I recognize that a prior criminal conviction represents a type of specific act or ats, but I do not find their exclusion under Kentucky cases binding or persuasive. *Ray v. Commonwealth*, 184 Ky., 800, 212 S.W. 908 (1919), *Friley v. Commonwealth*, Ky., 255 S.W.2d 483 (1953), and, *Lee v. Commonwealth*, Ky., 329 S.W.2d 57 (1959) all involved excluded testimony of a single or isolated act of violence. The opinions contain no rationale for their holdings. We are left to speculate if the basis of the exclusion is the singleness of the proffered proof, the risk of creating prejudice in the minds of the jury by a summary of the incident or some other basis. I would distinguish such cases, follow the federal rule, *United States of America v. Burks*, 470 F.2d 432 (D.C.Cir., 1972)[1] to admit evidence of the victim's prior conviction in cases in which the issue is to determine the aggressor and reverse the ruling of the Court of Appeals.

ASA M. ROUSE, Special Justice, dissenting.

Movant's counsel was right on target when he said that the center of this entire case is the factual issue of whether the Defendant, Thompson, or the victim, Carman, was the aggressor in the fight.

1. The *Burks* case has been considered indirectly by the Supreme Court in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, in a case in which the prosecutor failed to divulge to the accused the victim's prior criminal record. The Court, speaking through Justice Stevens, noted that in ruling upon the motion for a new trial, the trial judge evaluated the significance of the victim's prior criminal record in the full context of the trial, remained convinced of the accused guilt and, thus, did not deprive the accused of due process of law.

The legal issue presented on this appeal is whether or not a person accused of homicide may, in support of his defense of self-protection, introduce evidence of the victim's prior convictions for violent crimes when the accused was unaware of the victim's reputation for violence at the time the accused acted in self-defense.

Thompson cannot introduce evidence that Carman was the aggressor by proof of Carman's reputation, however frightful that reputation may have been. Thompson did not know of Carman's reputation when he shot Carman in self-defense. The law of evidence, clearly stated in *Amos v. Commonwealth,* Ky., 516 S.W.2d 836 (1974), is that, if Thompson had no prior knowledge of Carman's reputation, then evidence of that reputation is irrelevant and inadmissible. (This evidentiary rule implausibly ignores the relevance of the reputation evidence on the factual issue of aggressor identity, but addressing that will have to wait for another day.)

The Commonwealth cites *Parrish v. Commonwealth,* Ky., 581 S.W.2d 560 (1979), but that case furnishes no precedent on the legal issue raised on this appeal because Thompson, unlike the defendant in the Parrish case, had no awareness of the victim's reputation.

The jury, in this, the Thompson case, had the task of determining the identity of the aggressor. As in accomplishing any other task, at law or otherwise, the right tool is helpful, often essential.

Why not let the jury use a sensible tool (useful evidence) to help it decide the factual question? For example, there have been commissions composed of men of national repute to investigate criminal incidents. Such was not likely to happen in this case involving a homicide in Kentucky, of course. But if independent persons of deliberate and sound judgment were commissioned to investigate this incident and make a determination of whether or not the victim was the aggressor, they would without a doubt want, indeed *need,* to know if the victim had been convicted of violent crimes in the past.

Can we attribute to this trial jury in Jefferson County any less need for the sensible tool, or any less judgment of how to use it, than we attribute to my hypothetical commission? Of course not.

Other states have shown confidence in the jury's good sense, and allowed introduction of this most useful evidence of prior convictions, as did the trial judge in this, the Thompson case.

In *State v. Miranda,* 176 Conn. 107, 405 A.2d 622 (Conn.1978), the defendant's homicide conviction was set aside because the trial court improperly excluded evidence of the victim's prior convictions which was offered to show that the victim had initiated the conflict. The Connecticut court held that, when one accused of homicide claims self-defense, he may show the victim's character for violence by reputation testimony, by opinion testimony, or by evidence of the deceased's convictions of crimes of violence. The reasoning of the Connecticut court was patently rational when it said, 405 A.2d at page 625 of the opinion:

"... That a homicide victim has a record of violent crime should not come as a surprise to the prosecution. Nor is introduction of the victim's criminal record likely to confuse the jury and waste time, since the fact of the convictions is beyond dispute and inquiry must necessarily be limited to the time the events occurred and the nature of the conduct for which the victim was convicted.... Most important, such evidence can be highly relevant in helping the jury to determine whether the Defendant's story of self-defense is truthful." (Citations omitted). 405 A.2d at 625.

The Connecticut court, continuing its logical explanation for its holding, explained that only the victim's specific convictions for violent crimes would be admitted into evidence and that the Defendant could not introduce any and all convictions, no matter how petty, how remote in time, or how dissimilar in nature to the facts of the alleged aggression. The Court said that the probative value of the offered evidence

rested in the sound discretion of the trial court.

In *United States v. Burks,* 470 F.2d 432 (D.C.Cir., 1972), the Federal Court, in a case similar to this case, held that, where a claim of self-defense was raised, evidence of the victim's violent character, including evidence of specific violent acts, was admissible.

In *Dempsey v. State,* 159 Tex.Cr.R. 602, 266 S.W.2d 875 (Tex.Cr.App., 1954), the court reversed the defendant's homicide conviction and ordered that, upon re-trial, the defendant be permitted to introduce evidence of the victim's convictions for fighting, aggravated assault and disturbing the peace.

In thinking of "cluttered" trials, eminent domain cases almost automatically come to mind. They are notorious for their collateral issues, prolongment and confusion, all mostly a result of their unique evidentiary rules. Yet their juries consistently deal with it all, march through the evidentiary maze and reach rarely reversed verdicts. It should not be unexpected, therefore, that juries in homicide cases would keep in proper perspective evidence of a victim's prior convictions. Certainly, it makes no sense at all to deprive these juries (and the defendants) of this common sense tool just because some trial clutter may result.

The trial court was correct in allowing the introduction of the evidence of Carman's prior convictions. Neither the Parrish case nor any other case I can find says that the Circuit Judge was wrong and all other sensible considerations compel the conclusion that he was right. This Court should so hold, should affirm the trial court and should reverse the Court of Appeals in this respect.