# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 21, 2008
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2005-SC-000705-MR

TRACY LEMONT PENMAN        APPELLANT

V.
      
ON APPEAL FROM GARRARD CIRCUIT COURT
HONORABLE C. HUNTER DAUGHERTY, JUDGE
NO. 04-CR-00059

COMMONWEALTH OF KENTUCKY        APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Tracy Penman appeals from his conviction for first-degree sodomy and for being a first-degree persistent felony offender (PFO1). The jury acquitted him of one count of rape. In accordance with the jury's recommendation on the conviction, the trial court sentenced Penman to ten years in prison on the sodomy conviction, enhanced to twenty years by the PFO1 conviction. So he appeals to this Court as a matter of right.[1]

Penman raises four issues on appeal. Those issues relate to the trial and are as follows: (1) the trial court erred in denying his request for an attempted sodomy instruction; (2) the trial court erred in failing to direct a verdict of acquittal for first-degree

---

[1] Ky. Const. § 110(2)(b).

sodomy; (3) the trial court abused its discretion in excluding the testimony of two defense witnesses who would have testified, consistent with Penman's defense, that the alleged victim had offered to have sex with them in the past in exchange for drugs; and (4) the trial court abused its discretion in refusing to grant a mistrial after a law enforcement officer testified that on the day of the alleged rape and sodomy, he located and interviewed Penman at the probation office.

Upon review, we reject Penman's contentions that the evidence supported an additional jury instruction on attempted sodomy and that the trial court should have directed a verdict of acquittal for first-degree sodomy. And we find no abuse of discretion in the trial court's refusal to allow testimony of the victim's prior sexual conduct. Finally, we conclude that the trial court did not err in denying Penman's request for a mistrial based on testimony that a police officer located Penman at the probation office. Finding no error, we affirm the judgment of conviction and sentence.

## I. THE UNDERLYING FACTS.

In this case of "he said, she said," the jury believed part of what he said and part of what she said. At trial, the victim, K.P., testified that she had car trouble at about 2:00 a.m. She tried to call for help on a pay phone, but the pay phone was broken. While standing by the pay phone, Penman, whom K.P. did not know, and another man, whom K.P. did know, walked up to her. Penman offered to let K.P. use a phone at his sister's house, which was close to K.P.'s car. So K.P. went with Penman to his sister's house. When they arrived, Penman took her into the garage. The garage was set up as a living space. While in the garage, Penman turned out the lights, grabbed K.P. by the throat, and told her that he would kill her if she did not do what he told her to do.

2

Penman put something to K.P.'s throat that she believed was a knife. Penman made K.P. undress. He held her down and had vaginal intercourse with K.P., and then she felt his penis in her anus. After the anal penetration, Penman had vaginal intercourse a second time and ejaculated inside of her.

In contrast, Penman testified that he had consensual anal intercourse with K.P. in exchange for money for K.P. to purchase drugs. But during the intercourse, K.P. told Penman that it hurt. So he stopped.

K.P. left the house and returned to her car. She found a working pay phone and called the police. Police officers took K.P. to a hospital where a physician completed a rape exam, which included taking vaginal and anal swabs. At trial, the parties agreed to stipulate the admission of the medical report and lab results. The vaginal swab was inconclusive. But the anal swab was conclusive and matched the DNA profile of Penman with an estimated frequency of the profile being one person in one quintillion.

. Penman was indicted for first-degree rape, first-degree unlawful imprisonment, first-degree possession of a controlled substance (cocaine), possession of drug paraphernalia, and for PFO1. In a later indictment, he was also indicted for first-degree sodomy.

On the day of trial, the Commonwealth dismissed the unlawful imprisonment count. And by agreement of the parties, the cocaine possession and drug paraphernalia charges were severed to be tried separately from the rape, sodomy, and PFO1 counts.

During deliberations, the jury sent out three questions. First, the jury asked, "[C]an we convict on lesser charges?" The trial court, in response, called all parties to

3

the courtroom and answered, "[N]o. You have to follow the instructions as they are given." Second, the jury asked, "[W]hat is the likely sentence for a first degree sodomy?" The trial court explained to the jury that this was the guilt phase of the trial, and the jury was not to be concerned in any way with what the penalty might or might not be. Third, the jury sent out a request to view the videotape of K.P.'s interview with law enforcement officers, which had been placed into evidence by the Commonwealth. So the trial court asked the Commonwealth to replay the entire interview for the jury.

Ultimately, the jury convicted Penman of first-degree sodomy and of being a first-degree persistent felony offender. The jury acquitted him, however, of rape. Penman received a twenty-year sentence.

## II. THE TRIAL COURT DID NOT ERR IN DENYING PENMAN'S REQUEST FOR AN ATTEMPTED SODOMY INSTRUCTION.

Because the evidence presented at trial supported only two theories—(1) that Penman sodomized K.P. or (2) that Penman had consensual anal intercourse with K.P.—the trial court did not err in denying Penman's request to instruct the jury on attempted sodomy.

A trial court has a duty to "instruct the jury in writing on the law of the case[.]"[2] In carrying out this duty, a trial court must instruct on "every state of case covered by the indictment and deducible from or supported to any extent by the testimony."[3] "The determination of what issues to submit to the jury should be made based upon the totality of the evidence."[4]

---

[2]   Kentucky Rules of Criminal Procedure (RCr) Rule 9.54(1).

[3]   Lee v. Commonwealth, 329 S.W.2d 57, 60 (Ky. 1959).

[4]   Reed v. Commonwealth, 738 S.W.2d 818, 822 (Ky. 1987).

4

The relevant part of the statute criminalizing sodomy, Kentucky Revised Statutes (KRS) 510.070(1), reads:

A person is guilty of sodomy in the first degree when:

(a) He engages in deviate sexual intercourse with another person by forcible compulsion; or . . . .

The term "deviate sexual intercourse" is defined in KRS 510.010(1) as:

any act of sexual gratification involving the sex organs of one person and the mouth or anus of another; or penetration of the anus of one person by a foreign object manipulated by another person. "Deviate sexual intercourse" does not include penetration of the anus by a foreign object in the course of the performance of generally recognized health-care practices[.]

Attempted first-degree sodomy is a lesser offense of first-degree sodomy. The criminal attempt statute is:

(1) A person is guilty of criminal attempt to commit a crime when, acting with the kind of culpability otherwise required for commission of the crime, he:

. . . .

(b) Intentionally does or omits to do anything which, under the circumstances as he believes them to be, is a substantial step in a course of conduct planned to culminate in his commission of the crime.[5]

An attempted first-degree sodomy instruction would have been required only if, "considering the totality of the evidence, the jury might reasonably conclude that the defendant was not guilty of the charged offense, but was guilty of the lesser offense."[6] By Penman's own graphic description at trial and K.P.'s testimony, however, Penman had anal intercourse with K.P. The only issue for the jury to decide was whether or not it was consensual.

---

[5] KRS 506.010.

[6] Bills v. Commonwealth, 851 S.W.2d 466, 469 (Ky. 1993).

Penman testified that he had consensual sexual intercourse in exchange for money for K.P. to purchase drugs. He stated that he did not want to have vaginal intercourse with her because she was having her menstrual period at the time. So, at her suggestion, he had anal intercourse with her. He testified that before he began the sex act, she took lubricating gel out of her purse and applied it to herself. But she found the act uncomfortable and started complaining. Penman's defense counsel asked him, "[D]o you feel like you actually penetrated her, or just got up against her, or . . . ." Penman interrupted his attorney and answered, "Well, it was kind of like, you know, just starting, like, just starting and it started opening and she couldn't . . . ."

K.P. testified that she felt him penetrate her anus, and she begged him to stop. She felt his penis go inside her anus, but he took it out quickly. In addition to K.P.'s testimony, the Commonwealth played the videotaped statement that K.P. gave to law enforcement officers a few hours after the sexual assault. In that interview, K.P. stated that Penman put his penis down toward her anus, "and it kind of went in." K.P. screamed and begged him to stop. And he took his penis right back out.

In addition to the trial testimony of Penman and K.P., the medical evidence supports the act of anal intercourse, and not attempted anal intercourse. A physician noted in the medical exam that K.P.'s anus was reddened. And a sample taken from K.P.'s anus matched the DNA profile of Penman with an estimated frequency of the profile being one person in one quintillion.

In spite of the statutory definition of first-degree sodomy and the trial testimony of Penman and the victim, Penman argues that the trial court erred in not giving an instruction on attempted sodomy. In support of this argument, he relies on the affidavit

in support of the search warrant prepared by one of the investigating officers, Officer Willie Skeens. In the affidavit, Officer Skeens stated that K.P. said that there had been sexual intercourse and "attempted" anal intercourse with her. Penman also relies on a nurse's entry in K.P.'s medical records that there was "attempted anal penetration."

As defined above, criminal attempt is a legal term. A defendant is not entitled to an "attempt" instruction simply because others to whom the victim gave her version of the events characterized the act as "attempted" anal intercourse or "attempted" anal penetration. According to the trial testimony of the alleged victim and Penman, there was no "attempt" here. There was intercourse. Officer Skeens prepared his affidavit based on K.P.'s interview during which she never used the word "attempt." Considering the totality of the evidence, the trial court did not err in only instructing on first-degree sodomy and refusing to instruct on attempted first-degree sodomy. The fact that the jury asked during deliberations whether it could convict on lesser charges does not change our conclusion.

## III. THE TRIAL COURT DID NOT ERR IN FAILING TO DIRECT A VERDICT OF ACQUITTAL FOR FIRST-DEGREE SODOMY.

Under the evidence as a whole, it was not clearly unreasonable for a jury to find guilt on the charge of first-degree sodomy. So the trial court did not err in denying Penman's motion for a directed verdict.

On a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth, reserving to the jury all questions of credibility and weight of the evidence.[7] "On appellate review, the test of a

---

[7] Commonwealth v. Benham, 816 S.W.2d 186, 187 (Ky. 1991); Commonwealth v. Sawhill, 660 S.W.2d 3, 4 (Ky. 1983).

directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal."[8]

As set out above, a conviction for first-degree sodomy required the jury to find that Penman engaged in "deviate sexual intercourse" with K.P. by forcible compulsion.[9] "Deviate sexual intercourse" is "any act of sexual gratification involving the sex organs of one person and the mouth or anus of another[.]"[10] And "'[f]orcible compulsion' means physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of the immediate kidnap of self or another person, or fear of any offense under this chapter."[11]

Turning to K.P.'s testimony at trial, she described how Penman forced her to engage in deviate sexual intercourse. He placed something up to her neck, which she believed was a knife, and threatened to kill her if she did not comply. She complied because she was "scared." She testified, "I felt him penetrate me [anally], and I begged him to stop. I felt it go inside, but he then took it out quickly, so . . . ." She had no doubt that his penis penetrated her anus.

And Penman admitted that he had anal intercourse with K.P. His defense was that the act was consensual.

Penman argues that the jury acquitted him of first-degree rape. And he relies on the acquittal to support his argument that he was entitled to a directed verdict on the first-degree sodomy charge because it was clearly unreasonable for the jury to find him

---

[8]  Benham, 816 S.W.2d at 187.
[9]  KRS 510.070(1).
[10]  KRS 510.010(1).
[11]  KRS 510.010(2).

guilty of first-degree sodomy but not guilty of first-degree rape. We disagree. Judging the credibility of a witness and the weight to be given the witness's testimony are purely jury functions.[12] In carrying out those functions, a jury is "not required to believe all or none of the testimony of the witnesses. In their discretion they may believe any part or all of the testimony of any of the witnesses, or may disbelieve all of it."[13]

In this case, given the differing accounts by Penman and K.P. of what occurred, the jury could have believed that the vaginal intercourse was consensual, but the anal intercourse was not. Further, it could have believed that Penman did not have vaginal intercourse with K.P.; but he did sodomize her. The evidence supports either conclusion. So it was not clearly unreasonable for the jury to acquit Penman of the rape but convict him of the sodomy.

Penman argues that K.P.'s testimony was uncorroborated and unreliable; therefore, it was insufficient to sustain the sodomy conviction. It has long been the rule in Kentucky, however, that the unsupported testimony of the victim, "if not contradictory or incredible, or inherently improbable, may be sufficient to sustain a conviction of rape."[14] We find nothing contradictory or incredible or inherently improbable with K.P.'s testimony, especially when the only real issue, considering Penman's admission, was whether the intercourse was consensual. The jury concluded that it was not.

---

[12]  Benham, 816 S.W.2d at 187.

[13]  Gillispie v. Commonwealth, 279 S.W. 671, 672 (Ky. 1926).

[14]  Robinson v. Commonwealth, 459 S.W.2d 147, 150 (Ky. 1970).

## IV. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN EXCLUDING THE TESTIMONY OF TWO DEFENSE WITNESSES WHO WOULD HAVE TESTIFIED, CONSISTENT WITH PENMAN'S DEFENSE, THAT THE ALLEGED VICTIM HAD OFFERED TO HAVE SEX WITH THEM IN THE PAST IN EXCHANGE FOR DRUGS.

After Penman testified, defense counsel informed the trial court that she had issued subpoenas to two witnesses who would testify that before Penman had sexual intercourse with K.P., she had exchanged sexual favors with two other men on different occasions for drugs. The Commonwealth objected on the basis of relevancy and lack of notice. The trial court ruled that the proffered testimony was collateral and clarified with defense counsel that she was presenting the witnesses to impeach K.P. The Commonwealth continued to object on the basis of relevancy. The trial court ruled that defense counsel could recall the victim and ask her if she had had consensual intercourse with Penman that night in exchange for drug money. But if she denied it, defense counsel was not permitted to go any further with her questioning and was not permitted to call the two witnesses for the purpose of testifying as to specific instances of sexual conduct with K.P. Defense counsel put the testimony of the two witnesses on by avowal.

The first witness, Richard Murphy, testified that K.P. said that she would have oral sex with him in exchange for crack cocaine. The second witness, Demetrius Mitchell, testified that he heard that another person had given K.P. drugs at a party to entice Mitchell away from his girlfriend so that that person could be with Mitchell's girlfriend. When Mitchell left his girlfriend briefly at the party, he found K.P. naked in the kitchen waiting for him.

10

The hearsay issues aside, whether to admit the testimony of the two defense witnesses was within the trial court's discretion.[15] "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[16]

Under Kentucky Rules of Evidence (KRE) 412(a), the so-called "rape shield law," the following evidence is inadmissible in a criminal trial: "(1) [e]vidence offered to prove that any alleged victim engaged in other sexual behavior[,]" and "(2) [e]vidence offered to prove any alleged victim's sexual predisposition."[17] There are, however, three limited exceptions, which are set out in KRE 412(b)(1):

> (A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;
>
> (B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and
>
> (C) any other evidence directly pertaining to the offense charged.

The rape shield law is a proper exercise of the principle that in certain circumstances, a defendant's right to confront and cross-examine witnesses must give way to other legitimate state interests.[18] And in sexual assault cases, that interest is in protecting the privacy of sexual assault victims.

---

[15] Partin v. Commonwealth, 918 S.W.2d 219, 222 (Ky. 1996).

[16] Goodyear Tire and Rubber Co. v. Thompson, 11 S.W.3d 575, 581 (Ky. 2000).

[17] KRE 412(a).

[18] Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) ("Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."); Smith v. Commonwealth, 566 S.W.2d 181, 183 (Ky.App. 1978) (deciding that former KRS 510.145, predecessor of KRE 412, was constitutional and recognizing that its purpose is to prevent the victim of a sexually-related crime from becoming the defendant at trial).

Here, the proffered evidence from the two witnesses was inadmissible under KRE 412(a) because it was evidence offered to prove that K.P. engaged in other sexual behavior. The evidence did not fall under any of the three exceptions of KRE 412(b)(1). First, based on the DNA test results, there was no dispute that Penman was the source of the semen. Second, the proffered evidence did not pertain to specific instances of sexual behavior by K.P. with respect to Penman. Third, since the evidence concerned events occurring some time before the events for which Penman was indicted and involved different men, it could not have directly pertained to the offenses charged. The trial court did not abuse its discretion in refusing to allow the testimony.

## V. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN REFUSING TO GRANT A MISTRIAL AFTER A LAW ENFORCEMENT OFFICER TESTIFIED THAT ON THE DAY OF THE ALLEGED RAPE AND SODOMY, HE LOCATED AND INTERVIEWED PENMAN AT THE PROBATION OFFICE.

During the Commonwealth's case-in-chief, the prosecutor inquired of Officer Russell Preston, one of the investigating officers, how Penman came to know that law enforcement officers were interested in talking with him about K.P. The following exchange occurred:

> Q. Now, officer, you continued working on this case throughout that day, did you not?

> A. Yes, sir; I had to take a break. I had to go out of town, but then later on that evening, we got up with Mr. Penman, at the office where he went to, the probation office, we had him come in at seven o'clock that evening, when Officer Skeens and myself would be available.

Defense counsel did not object immediately after the officer made a reference to "probation." Instead, she waited a few minutes, and then asked to approach the bench.

In the bench conference, she moved for a mistrial. She reasoned that she did not object immediately because she did not want to draw attention to the reference. The trial court denied the motion. In so doing, the trial court stated that it did not believe that the jury would think that Penman was on probation just because he was at the probation office. Following the trial court's ruling, defense counsel did not request an admonition.

Similar to evidentiary rulings, whether to grant a motion for a mistrial is within the trial court's discretion.[19] A mistrial "should only be granted where there is a 'manifest necessity for such an action or an urgent or real necessity.'"[20] And the error upon which a request for a mistrial is based "must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way [except by grant of mistrial]."[21]

We agree with the trial court that the jury would not necessarily conclude that Penman had committed other bad acts simply because he was at the probation office. Even if we disagreed with the trial court, however, we believe that the officer's fleeting reference to the probation office would have been easily cured by an admonition, had defense counsel requested one.[22] An admonition having been the adequate remedy, a

---

[19] Gosser v. Commonwealth, 31 S.W.3d 897, 906 (Ky. 2000) (motions for mistrial).

[20] Gosser, 31 S.W.3d at 906 (quoting Skaggs v. Commonwealth, 694 S.W.2d 672, 678 (Ky. 1985), cert. denied, 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986)).

[21] Gould v. Charlton Co., Inc., 929 S.W.2d 734, 738 (Ky. 1996).

[22] E.g., Bray v. Commonwealth, 177 S.W.3d 741, 752 (Ky. 2005) (concluding that trial court did not abuse its discretion in denying defense counsel's request for mistrial after (1) prosecutor questioned defendant about a threat that he allegedly made to another person and (2) defense counsel did not request an admonition, which would have cured the error); Graves v. Commonwealth, 17 S.W.3d 858, 865 (Ky. 2000) (holding that arguably erroneous admission of testimony concerning defendant's prior criminal conviction is the type easily cured by an admonition to the jury to disregard the testimony).

13

mistrial was unwarranted. So the trial court did not abuse its discretion in denying Penman's request for a mistrial.

## VI. CONCLUSION.

For the foregoing reasons, we affirm the circuit court's judgment.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Shannon Dupree
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 301
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Michael Harned
Assistant Attorney General
Office of Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, KY 40601-8204